AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Texas

| | |
|---|---|
| Chevron Intellectual Property LLC, et al. | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 4:18-cv-3133 |
| AEG Petroleum, LLC | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:            Todd Pitts, 6008 Tuscany Village, Amarillo, Texas 79119.

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

The Examination Topics listed in Defendant AEG Petroleum, LLC's Second Amended Notice of Deposition and Second Amended Request for Production of Documents to Western Marketing Inc.

| Place: Mullin Hoard & Brown, LLP, 500 S. Taylor, Suite 800, Amarillo, Texas 79101 | Date and Time: 11/25/2019 9:00 am |
|---|---|

The deposition will be recorded by this method:     Stenographically and by video

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: The Documents and Things listed in Defendant AEG Petroleum, LLC's Second Amended Notice of Deposition and Second Amended Request for Production of Documents to Western Marketing Inc.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     11/05/2019

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Defendant AEG Petroleum, LLC                                    , who issues or requests this subpoena, are:

Bradley C. Weber, Locke Lord LLP, 2200 Ross Ave., Suite 2800, Dallas, TX 75201; bweber@lockelord.com; 214-740-8497

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   4:18-cv-3133

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____                    _____
                                                         *Server's signature*

                                                         _____
                                                         *Printed name and title*

                                                         _____
                                                         *Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    (i) disclosing a trade secret or other confidential research, development, or commercial information; or
    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| Chevron Intellectual Property LLC and Chevron U.S.A. Inc., | |
| Plaintiffs, | |
| v. | Case No. 4:18-cv-3133 |
| AEG Petroleum, LLC, | |
| Defendant. | |

### DEFENDANT AEG PETROLEUM LLC's SECOND AMENDED NOTICE OF DEPOSITION AND SECOND AMENDED REQUEST FOR <u>PRODUCTION OF DOCUMENTS TO TODD PITTS</u>

Pursuant to FED. R. CIV. P. 30 and 45, Defendant AEG Petroleum, LLC ("AEG" or "Defendant") will take the deposition of Todd Pitts ("Mr. Pitts") on November 25, 2019, beginning at 9:00 a.m., at the offices of Mullin Hoard & Brown, LLP, 500 S. Taylor, Suite 800, Amarillo, Texas 79101, or at another time and place agreed upon by the parties and continuing day-to-day until completed.

The examination will be taken before a Notary Public or other person authorized to administer oaths and will be recorded stenographically and by video. Testimony derived pursuant to this Notice of Deposition shall be used for any and all appropriate purposes permitted by the Federal Rules of Civil Procedure and the local rules of the United States District Court for the Southern District of Texas, Houston Division.

**Definitions**

The following definitions are applicable to AEG's Second Amended Request for Production of Documents to Todd Pitts.

1. **"Chevron"** or **"Plaintiffs"** means the named Plaintiffs in this litigation, Chevron Intellectual Property LLC and Chevron U.S.A. Inc., and their agents, employees, representatives, and all those acting or purporting to act on behalf of either Plaintiff.

2. **"AEG"** or **"Defendant"** means the named Defendant in this litigation, AEG Petroleum, LLC, and its agents, employees, and representatives.

3. **"WMI"** means Western Marketing Inc., as well as its parent company, RelaDyne, Inc., and their agents, employees, representatives, and all persons acting or purporting to act on their behalf or under their control.

4. **"First Amended Complaint"** means the First Amended Complaint filed by Chevron in this action on August 16, 2019 [ECF No. 62], a true and correct copy of which, without exhibits, is attached as **Exhibit A**.

5. **"Pitts Declaration"** means the Declaration of Todd Pitts that was filed in this action on October 9, 2018 [ECF No. 28], a true and correct copy of which is attached as **Exhibit B**.

6. **"Protective Order"** means the Stipulated Protective Order that was signed by counsel for Chevron and AEG, and was filed with the Court on February 14, 2019 [ECF No. 50], a true and correct copy of which is attached as **Exhibit C**.

7. **"Hansford"** means Hansford Supply, Inc., which formerly was a defendant in this litigation, and its agents, employees, and representatives.

8. **"SJB"** means SJB Services, LLC, and its agents, employees, and representatives.

9. **"ALS Global"** means the Chevron-approved lab that analyzed samples of bulk lubricant products referenced in the First Amended Complaint and the Pitts Declaration.

10. **"Document Preservation Letter"** means the September 24, 2018 letter sent by certified mail to Todd Pitts, on behalf of WMI, with a duplicate copy sent by certified mail to Mr. Jess Brown, on behalf of RelaDyne, Inc., a true and correct copy of which is attached as **Exhibit D**.

81594525v.1

11. **"Chevron Bulk Products"** includes bulk lubricant products sold under the Chevron Trademarks, namely DELO, HAVOLINE, URSA, and HDAX as referenced in the First Amended Complaint and in the Pitts Declaration.

12. **"WMI Preferred Choice Bulk Products"** or **"WMI PC Bulk Products"** means the WMI-branded bulk lubricant products that WMI sold to AEG and other customers under this private label name or similar names, including without limitation "BULK PC NGEO LA 30" or "BULK PC NGEO LA 30 (K)." References to the WMI PC Bulk Products are included in the email, Product Data Sheets, and WMI invoice attached as **Exhibit E**.

13. **"ALM"** means an "Associate Lubrication Marketer" that commercially distributes Chevron Bulk Products, as referenced in the Pitts Declaration.

14. **"LM"** means a "Lubrication Marketer" that commercially distributes Chevron Bulk Products, as referenced in the Pitts Declaration.

15. **"Chevron Product Standards"** means Chevron's strict product quality control processes and product integrity standards related to the handling, distribution, and marketing of Chevron Bulk Products, including specific procedures for unsealing, pumping, transporting, and/or otherwise transferring Chevron Bulk Products, as referenced in Paragraphs 17 and 20 of the First Amended Complaint.

16. The words **"concern"** or **"concerning"** mean referring to, involving, commenting on, discussing, evidencing, describing, depicting, constituting, containing, embodying, and identifying.

17. The word **"Document"** shall be construed broadly to include the full scope of that term contemplated in Federal Rules of Civil Procedure 26 and 34 and Federal Rule of Evidence 1001, including, without limitation, documents and electronically-stored information. If a draft document has been prepared in multiple versions that are not identical, or if the original identical versions are no longer identical due to subsequent modification, each non-identical document shall be produced.

18. **"Thing"** shall be construed broadly and include the full scope of that term contemplated in Federal Rules of Civil Procedure 26 and 34.

19. **"Sales Documents"** means the documents customarily used to evidence the purchase, sale, and delivery of bulk lubricant products, including without limitation, the following:

- Purchase Orders

- Invoices
- Delivery receipts
- Shipping papers
- Certificates of analysis
- Manifest numbers
- Consignment documents
- Bills of lading

### Instructions

1. If Mr. Pitts has any questions about the nature of the documents requested, or any of these instructions, Mr. Pitts should contact AEG's counsel, Bradley C. Weber at 214-740-8497 or bweber@lockelord.com to discuss any questions Mr. Pitts may have.

2. These instructions shall apply to all Documents and Things in your possession, custody, or control at the present time, or coming into your possession, custody, or control prior to the deposition. If you know of the existence, past or present, of Documents and Things requested by AEG, but are unable to produce such Documents and Things because they presently are not in your possession, custody, or control (whether due to their destruction, loss, or otherwise), you shall so state and shall identify such Documents and Things, and the person who had possession, custody, or control of such Documents and Things. "Documents and Things in your possession, custody, or control" shall include Documents and Things in the possession, custody, or control of a third party over which you have control.

3. Documents are to be produced in their full and un-redacted form. Redacted Documents shall not constitute compliance with this request, unless such Documents are redacted pursuant to a claim of privilege, as set forth below and in the Protective Order.

4. In the event a Document or Thing is withheld or redacted on a claim of attorney-client privilege or work-product privilege, you shall provide a detailed privilege log that describes the privilege being claimed and the information withheld in a manner sufficient to disclose facts upon which you rely in asserting your claim, and to permit your claim of privilege to be assessed by AEG and its attorneys.

5. If you object to a part of a request, you shall state the basis for your objections and respond to all parts of the request not subject to your objections.

6. In the event that you object to a request or a term used therein as vague and/or ambiguous, you must identify the particular words, terms, or phrases that you contend are vague and/or

81594525v.1                                            4

ambiguous, and specify the meaning you actually attributed to such words for purposes of your response.

7.      The singular form of a word shall always include the plural form of the word, and vice versa. Likewise, the present tense of a word shall also include the past tense of the word, and vice versa. Any pronoun shall mean the masculine, feminine, and/or gender neutral as is most appropriate.

8.      If Mr. Pitts seeks to retain the confidentiality of any documents requested by AEG, Mr. Pitts may invoke the provisions of the Protective Order.

### Second Amended Request for Production of Documents to Todd Pitts

Pursuant to Federal Rule of Civil Procedure 45, Mr. Pitts is requested to produce the documents identified below. The requested documents and information should be produced at the offices of Mullin Hoard & Brown, LLP, 500 S. Taylor, Suite 800, Amarillo, Texas 79101, or at another place agreed upon by the parties, at least seven (7) days before the deposition.

**Request No. 1:**  In Paragraph 4 of the Pitts Declaration, Mr. Pitts states that "[AEG] became affiliated with WMI as an ALM for Chevron Bulk Products within my territory in February 2011. I worked directly with AEG during its term as an ALM of Chevron Products for WMI." Please produce all Documents and Things concerning (a) any ALM agreement between AEG and WMI (or between AEG and Chevron), and (b) any communications between you and other representatives of WMI, or between you and representatives of AEG, Chevron, and/or WMI, concerning the existence or negotiation of an ALM agreement or ALM relationship between WMI and AEG (or Chevron and AEG).

**Request No. 2:**  In Paragraph 5 of the Pitts Declaration, Mr. Pitts states that "In late 2016, I received reports from several of WMI's ALMs in the Texas panhandle that AEG was selling Delo at below market price. AEG was purchasing all Chevron products in its inventory from WMI, but had not purchased Delo from us, so I knew that they were not authorized to offer that product for sale." Please produce all Documents and Things concerning the referenced reports you received from several of WMI's ALMs in the Texas panhandle "that AEG was selling Delo at below market price," including the names of the ALMs that made the reports, the substance of the reports, and the "market price" below which AEG was selling Delo.

**Request No. 3:**  Please produce all Documents and Things concerning communications between you and Chuck Beago, as referenced in Paragraph 6 of the Pitts Declaration.

**Request No. 4:**  Please produce all Documents and Things concerning the "late 2016" meeting with Patrick Gomez of AEG, as referenced in Paragraph 6 of the Pitts Declaration.

**Request No. 5:** In Paragraph 7 of the Pitts Declaration, Mr. Pitts states that "I continued to receive reports from ALMs concerning AEG selling Chevron Bulk Lubricants at below market price." Please produce all Documents and Things concerning the referenced reports you received from ALMs that AEG was "selling Chevron Bulk Lubricants at below market price," including the names of the ALMs that made the reports, the substance of the reports, and the "market price" below which AEG was selling the Chevron Bulk Lubricants.

**Request No. 6:** Also in Paragraph 7 of the Pitts Declaration, Mr. Pitts states that "Because AEG would not acknowledge or address these issues, I advised Mr. Gomez by phone in March 2017 that WMI was terminating its ALM relationship with AEG. WMI stopped selling and delivering Chevron Bulk Products to AEG when the ALM relationship ended in March 2017." Please produce all Documents and Things concerning (a) your referenced call with Mr. Gomez in 2017, and (b) any other communications between you and other representatives of WMI, or between you and representatives of AEG, Chevron, and/or WMI, concerning the termination of an ALM agreement or relationship between WMI and AEG (or Chevron and AEG).

**Request No. 7:** In Paragraph 8 of the Pitts Declaration, Mr. Pitts states that "In early 2018, I received reports from certain of WMI's ALMs that AEG was offering Chevron Bulk Lubricants for sale. AEG was no longer an ALM of WMI and was therefore not authorized to sell any Chevron products." Please produce all Documents and Things concerning the referenced reports you received from ALMs that "AEG was offering Chevron Bulk Lubricants for sale," including the names of the ALMs that made the reports and the substance of the reports.

**Request No. 8:** In Paragraph 9 of the Pitts Declaration, Mr. Pitts states that "On March 30, 2018, I obtained from a Panhandle area engine services end-user a sample of a bulk product sold by AEG that purported to be HDAX 3200." Please produce all Documents and Things concerning this bulk product sample, including the facts and circumstances related to how you obtained the sample and the persons who were present when you obtained the sample.

**Request No. 9:** Also in Paragraph 9 of the Pitts Declaration, Mr. Pitts states that "I sent two samples of the product to ALS Global in Phoenix for product-specification testing ... Specifically, I asked them to test whether the two samples matched Chevron's HDAX 3200 or 5200." Please produce all Documents and Things concerning the testing of these two sample, including the facts and circumstances related to how you sent the samples to ALS Global for testing and any communications among representatives of WMI, Chevron, and/or ALS Global relating to the testing of the two samples.

**Request No. 10:** Also in Paragraph 11 of the Pitts Declaration, Mr. Pitts states that "I am aware that WMI lost customers as a result of these unauthorized sales to Hansford." Please produce all Documents and Things concerning the customers that WMI lost as a result of the unauthorized sales to Hansford, including the identity of the customers and the sales WMI would have made had it not been for the unauthorized sales to Hansford.

**Request No. 11:**  Please produce all Documents and Things concerning bulk lubrication products labeled as Chevron Bulk Products and sold to AEG by WMI, but which were not authentic Chevron Bulk Products or were contaminated, misbranded, or erroneously labeled.

**Request No. 12:**  Please produce all Documents and Things concerning any written policies or procedures that WMI adopted to comply with the Chevron Product Standards for Chevron Bulk Products.

**Request No. 13:** Please produce all Documents and Things concerning any written compliance audits of WMI by Chevron with regard to the Chevron Product Standards for Chevron Bulk Products.

**Request No. 14:**   Please produce all Documents and Things, including Sales Documents, concerning WMI's sales of Chevron Bulk Products to AEG, including any communications between you and AEG related to those sales.

**Request No. 15:**   Please produce all Documents and Things, including Sales Documents, concerning WMI's sales of WMI PC Bulk Products to AEG, including any communications between you and AEG related to those sales.

**Request No. 16:**  Please produce all Documents and Things concerning customer complaints or warranty claims that were received by WMI and related to bulk lubricant products sold by AEG.

**Request No. 17:**   Please produce all Documents and Things concerning communications or discussions (a) among you and other representatives of WMI, or (b) between you and representatives of other persons or entities, including Chevron and customers of WMI, relating to this lawsuit or any of the factual allegations contained in the First Amended Complaint or the Pitts Declaration.

**Request No. 18:**  Please produce all Documents and Things concerning any evidence you obtained that suggested AEG was offering lower prices for Chevron Bulk Products than WMI could offer.

**Request No. 19:** Please produce all Documents and Things concerning WMI lost sales of Chevron Bulk Products that occurred because AEG was offering to sell Chevron Bulk Products at prices lower than the prices WMI was charging for sales to those customers.

**Request No. 20:**  Please produce all Documents and Things concerning the steps that you took, after receiving the Document Preservation Letter, to preserve all Documents and Things containing information potentially relevant to the issues in this litigation.

Dated this 31st day of October, 2019.

Respectfully submitted,

**LOCKE LORD LLP**


*/s/ Bradley C. Weber*
Bradley C. Weber
*Attorney-in-charge*
    Texas State Bar No. 21042470
    Southern District of Texas No. 92565
    Email: bweber@lockelord.com
2200 Ross Avenue, Suite 2800
Dallas TX 75201-6776
Tel: (214) 740-8497
Fax: (214) 756-8497


**MULLIN HOARD & BROWN, L.L.P.**

Mark S. Logsdon
    Texas State Bar No. 00795486
    Email: mlogsdon@mhba.com
500 South Taylor, Suite 800
P. O. Box 31656
Amarillo, Texas 79120-1656
Telephone: (806) 372-5050
Facsimile: (806) 372-5086

**ATTORNEYS FOR DEFENDANT,
AEG PETROLEUM, LLC**


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 31, 2019, a true and correct copy of this document was served on all counsel for record via email before the document was served on Mr. Pitts' counsel or registered agent.


Bradley C. Weber

# EXHIBIT A

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

Chevron Intellectual Property LLC, and
Chevron U.S.A. Inc.,

Plaintiffs,

v.

AEG Petroleum LLC,

Defendant.

Case No. 4:18-cv-3133

## FIRST AMENDED COMPLAINT

Plaintiffs Chevron Intellectual Property LLC and Chevron U.S.A. Inc. (collectively, "Chevron")[1] file this First Amended Complaint and seek damages (trebled), profits, and attorneys' fees and costs, against Defendant AEG Petroleum LLC ("AEG" or "Defendant").

## INTRODUCTION

1.  Defendant has engaged in the unauthorized use of Chevron trademarks in connection with its sale of lubricant products in a manner that has caused and is likely to continue to cause confusion in the marketplace.

2.  Defendant's unauthorized use of Chevron trademarks harms third-party and downstream customers, who believe they are purchasing authorized and appropriately branded Chevron product with applicable Chevron warranties, when

---

[1] Chevron Intellectual Property LLC and Chevron U.S.A. Inc. are separate and distinct entities but are referred to in this pleading as "Chevron" for simplicity.

they are not. The unauthorized use of the Chevron trademarks by Defendant also harms Chevron's reputation and goodwill.

3. Defendant's use of the Chevron trademarks at issue was not sanctioned, authorized, or licensed by Chevron. This suit seeks to permanently prevent Defendant from further infringing Chevron's trademarks, from continuing any misrepresentation, and from causing irreparable harm to Chevron.

## PARTIES

4. Plaintiff Chevron Intellectual Property LLC is a Delaware limited liability company, with its principal place of business at 6001 Bollinger Canyon Road, San Ramon, California 94583. Chevron Intellectual Property LLC is the owner of the Chevron Trademarks identified below.

5. Plaintiff Chevron U.S.A. Inc. is a Pennsylvania corporation, with its principal place of business at 6001 Bollinger Canyon Road, San Ramon, California 94583. Chevron U.S.A. Inc. is a primary licensee of the Chevron Trademarks identified below.

6. Defendant AEG Petroleum LLC is a Texas limited liability company having a business address of 101 S.E. 11th, Suite 304, Amarillo, Texas 79101. Defendant AEG has a registered agent in Texas—Garland D. Sell, 504 S. Polk, Suite 101, Amarillo, Texas 79101-2318; has filings with the Texas Secretary of State's office, listing managers and directors at the address P.O. Box 1003, Amarillo, Texas 79105-1003; and has a website, www.aegpetroleum.com. AEG describes itself on that website as a seller of bulk oil products including gasoline,

diesel, lubricants, and propane. AEG sells throughout Texas, as advertised on its website. Attached as Exhibit 1 is a true and correct copy of the AEG website, www.aegpetroleum.com as accessed on Aug. 28, 2018.

## JURISDICTION AND VENUE

7. This Court has original subject matter jurisdiction over this trademark action pursuant to 28 U.S.C. § 1338(a) and 15 U.S.C. § 1121. This Court has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367.

8. This Court has personal jurisdiction over Defendant because Defendant maintains a place of business in the State of Texas.

9. Venue is proper in this district under 28 U.S.C. § 1391(b), (c), and (d) because Chevron is located in this district, and Defendant sells within this district and is subject to personal jurisdiction in this district. AEG's own website identified the entire State of Texas as "Locations We Service," which includes this district. *See* Ex. 1 at 13.

10. Defendant's acts are causing irreparable harm to Chevron in this district.

## FACTS RELEVANT TO ALL CAUSES

### Chevron's Famous Trademarks

11. Chevron is a global leader among integrated energy companies with operations comprising upstream exploration and production, midstream transportation, power and trading, downstream manufacturing and retail, and technology.

3

12.    Chevron and its products and services are recognized for their quality, performance, and technology around the world.

13.    Chevron Intellectual Property LLC is the owner of, and Chevron U.S.A. Inc. is a primary licensee of the CHEVRON mark, the CHEVRON logo, the DELO marks, the HAVOLINE mark, the URSA mark, and the HDAX mark including, among many others, the following federally registered trademarks (collectively, the "Chevron Trademarks"):

| Ex. No. | Trademark | U.S. Reg. No. & Date | Goods & Services |
|---------|-----------|----------------------|------------------|
| 2 | Chevron | 3,450,887 June 17, 2008 | Int'l Class: 04 "petroleum and petroleum-derived products" |
| 3 | Chevron | 3,455,273 June 24, 2008 | Int'l Class: 04 "petroleum and petroleum-derived products" |
| 4 | Chevron | 3,450,910 June 17, 2008 | Int'l Class: 04 "petroleum and petroleum-derived products" |
| 5 | CHEVRON | 416,133 Aug. 28, 1945 (last renewed Sept. 19, 2015) | Int'l Class: 04 "motor fuels for use in internal combustion engines" |

| Ex. No. | Trademark | U.S. Reg. No. & Date | Goods & Services |
|---------|-----------|----------------------|------------------|
| 6 | Chevron | 972,729<br>Nov. 13, 1973<br>(last renewed Nov. 13, 2013) | Int'l Class: 04<br><br>"petroleum and products derived from petroleum" |
| 7 | Chevron | 2,397,626<br>Oct. 24, 2000<br>(last renewed Oct. 27, 2010) | Int'l Class: 04<br><br>"petroleum and products derived from petroleum" |
| 8 | CHEVRON | 658,682<br>Feb. 25, 1958<br>(last renewed Mar. 28, 2008) | Int'l Class: 04<br><br>"petroleum waxes, white oils, and petrolatums, motor fuels, lubricating oils and greases" |
| 9 | Chevron | 888,144<br>Mar. 24, 1970<br>(last renewed Mar. 28, 2010) | Int'l Class: 04<br><br>"internal combustion engine fuels; kerosene; lubricating oils and greases" |
| 10 | Chevron | 3,473,719<br>Jul. 22, 2008<br>(last renewed Aug. 3, 2018) | Int'l Class: 01<br><br>"chemicals and chemical intermediates for use in the industrial arts" |

| Ex. No. | Trademark | U.S. Reg. No. & Date | Goods & Services |
|---------|-----------|----------------------|------------------|
| 11 | **Chevron** | 973,179<br>Nov. 20, 1973<br>(last renewed Nov. 25, 2013) | Int'l Class: 01, 04<br><br>"chemicals and chemical intermediates for use in the industrial arts" |
| 12 | | 3,455,296<br>Jun. 24, 2008<br>(last renewed Jul. 5, 2018) | Int'l Class: 04<br><br>"Petroleum and petroleum-derived products for industrial and automotive use" |
| 13 | DELO | 3,345,946<br>Nov. 27, 2007<br>(last renewed Dec. 21, 2017) | Int'l Class: 01<br><br>Transmission Fluid |
| 14 | DELO | 1,008,301<br>Apr. 8, 1975<br>(last renewed Apr. 14, 2015) | Int'l Class: 04<br><br>Lubricating Oils and Greases |
| 15 | HAVOLINE | 61,806<br>Apr. 9, 1907<br>(last renewed Apr. 11, 2017) | Int'l Class: 04<br><br>Oils [and greases] for gas-engines and automobiles |
| 16 | URSA | 84,057<br>Oct. 31, 1911<br>(last renewed Sept. 26, 2011) | Int'l Class: 04<br><br>Lubricating Oils |

| Ex. No. | Trademark | U.S. Reg. No. & Date | Goods & Services |
|---------|-----------|----------------------|------------------|
| 17 | HDAX | 1,726,933<br>Oct. 27, 1992<br>(last renewed Oct. 26, 2012) | Int'l Class: 04<br>Lubricating oils for use in two-cycle and four-cycle natural gas engines |

14.     Exhibits 2 through 17 are copies of the above Registrations with prints from the U.S. Patent and Trademark Office records confirming the Registrations' current active status and ownership by Plaintiff Chevron Intellectual Property LLC. These Registrations are valid, subsisting, and in full force and effect. In addition, each of the Chevron Trademarks have been registered for over five years and are incontestable pursuant to 15 U.S.C. § 1065.

15.     The CHEVRON word mark has been in continuous and extensive use in commerce since at least as early as 1935. The CHEVRON logo mark has been in continuous and extensive use in commerce (with minor design alterations over the years) since at least as early as 1969. The DELO mark has been in continuous and extensive use in commerce since at least 1975. The HDAX mark has been in continuous and extensive use in commerce since the 1960s. The HAVOLINE and URSA marks have been in continuous and extensive use in commerce for more than a hundred years.

16.     Chevron has expended large sums of money over many years advertising goods and services under the Chevron Trademarks throughout the United States. As a result of this long-term use and extensive promotion of the

Chevron Trademarks, these marks have become well-known to the trade and the general public throughout the United States, and Chevron has established extensive goodwill and public recognition in and of the marks as exclusive identifiers of Chevron's goods and services. The Chevron Trademarks are widely recognized by the general consuming public of the United States as a designation of the source of Chevron's goods and services and have become famous.

<strong>Chevron Bulk Products and Product Integrity Standards</strong>

17.     Chevron sells bulk lubrication products and related services, including its DELO, HDAX, HAVOLINE, and URSA products (collectively, the "Chevron Bulk Products"). Chevron Bulk Products are subject to quality control processes and generally are delivered by hose (and not by tote or other container) to a storage tank before installing the product into a vehicle or other end use. Chevron Bulk Products are used in all types of vehicles and equipment.

18.     Chevron exclusively manufactures these products at Chevron's or its authorized blenders' refineries and plants. Chevron is recognized for its quality, performance, and technology around the world. Moreover, Chevron has consistently produced and rendered these high-quality lubricant products and services under the Chevron Trademarks throughout the United States for decades or even longer.

19.     To maintain its reputation for quality, Chevron maintains a network of authorized marketers known as "Lubrication Marketers" ("LMs") that commercially distribute Chevron's lubricants, including Chevron Bulk Products. The use of Chevron Trademarks by the LMs is subject to Chevron's sole discretion. These LMs, in turn, may take on "Associate Lubrication Marketers" ("ALMs") for specific

8

reasons, including, for example, to service customers in a more remote location, or to capitalize on the ALM's existing relationship with a particular customer.

20. To ensure that end users are purchasing the high-quality product that the public associates with Chevron's brands of lubricants, Chevron has established a number of product integrity standards related to the handling, distribution, and marketing of its lubricants. Such product integrity standards include, for example, specific procedures for unsealing, pumping, transporting, and otherwise transferring Chevron Bulk Products.

21. The use of the Chevron Trademarks, among other marks, by LMs or ALMs is subject to Chevron's discretion and to compliance with Chevron's product integrity standards and other requirements. Chevron audits its LMs every one-to-three years to ensure that the LMs are using the correct labels and hoses for the correct products, and otherwise maintaining Chevron's product integrity standards.

**AEG's Unauthorized Use of the Chevron Trademarks**

22. Chevron is informed and believes that Defendant AEG has been using Chevron Trademarks including DELO, HDAX, and URSA in connection with its sales without authorization from Chevron. Any authorization (as an ALM or otherwise) purportedly from a Chevron LM for AEG to use the Chevron Trademarks in connection with its sales was revoked by no later than 2017. Yet, AEG continued to use the Chevron Trademarks in its sales, including in connection with AEG's downstream sales of products sold by the LM as private-label products, not bearing the Chevron Trademarks and not subject to the applicable Chevron warranty. A true and correct copy of the Chevron warranty applicable to particular branded

9

products is attached hereto as Exhibit 18 (available at https://www.chevronlubricants.com/en_us/home/chevron-warranty.html).

23.     Chevron obtained samples of lubricants that AEG customers offered for sale as Chevron-branded products. Chevron sent these samples to a third-party laboratory to be tested and learned that these lubricants either were contaminated Chevron products, or unknown products altogether.

24.     Chevron sent AEG a cease and desist letter on June 5, 2018, demanding that AEG "immediately cease any unauthorized sale, advertising, promotion, display or invoicing of oils, lubricants, or any other petroleum products using the Chevron Marks." Attached as Exhibit 19 is a true and correct copy of the cease and desist letter dated June 5, 2018.

25.     Hearing no response from AEG, Chevron contacted AEG by e-mail. On or around June 25, 2018, Mr. Mark Logsdon, an attorney for AEG, contacted Chevron, and the parties exchanged a series of correspondence by phone and e-mail. During these discussions, AEG would not commit to stop selling product deceptively labeled as Chevron Bulk Product and otherwise unfairly competing with Chevron. Instead, Mr. Logsdon requested further documents and information regarding Chevron's testing of the Hansford product that had come from AEG.

26.     On June 29, 2018, at AEG's request, Chevron sent AEG a second letter containing more information about Chevron's investigation, including a copy of a sales offer from AEG dated June 8, 2018, a true and correct copy of which is attached hereto as Exhibit 20. This document shows AEG offering to sell Chevron

products including HDAX 3200 Low Ash 30W and HDAX 3200 Low Ash 40W after WMI stopped supplying AEG with Chevron products.

27.    AEG responded with a letter dated July 20, 2018. AEG's letter demanded that Chevron provide additional evidence that AEG's products were unauthorized and/or not as advertised by AEG. AEG also asked that Chevron provide the chain of custody for the product test results. Importantly, AEG did not provide any explanation for the accused conduct, nor did it agree to cease its sales of Chevron Bulk Products.

28.    Chevron also is informed and believes that AEG has been purchasing private-label product not specified by an LM as Chevron product and not bearing any Chevron Trademarks or accompanied by the applicable Chevron warranty and then on its own and without any authorization from Chevron using the Chevron Trademarks when reselling that private-label product downstream.

*    *    *    *    *

29.    Chevron has no access or ability to control or maintain the nature and quality of the products handled, offered for sale, distributed, and sold in bulk by Defendant. Chevron cannot verify, warrant, or ensure that Defendant is following any standards for quality assurance, much less Chevron's specific product integrity standards, in Defendant's handling of bulk product that Defendant is selling using the Chevron Trademarks. Chevron cannot permit Defendant's misappropriation and unauthorized use of the Chevron Trademarks in connection with the sale of products which may or may not be genuine Chevron products and which, even if at

11

some point in the supply chain were products sourced from Chevron, are not stored, shipped, transported, or handled in accordance with Chevron's product integrity standards and are not supported by the applicable Chevron warranty.

30. Defendant's unauthorized use of the Chevron Trademarks in connection with these products is likely to cause confusion, mistake, or deceive customers and potential customers into thinking that there is an affiliation, connection, sponsorship, or association between Chevron and Defendant and/or between Chevron and the products sold by Defendant and/or that Chevron has authorized and warrants Defendant's sales, handling, and distribution of Chevron Bulk Products, when such is not the case.

31. As a result of Defendant's unauthorized use of the Chevron Trademarks, Defendant is unlawfully benefitting from the goodwill, labor, and significant expense that Chevron has undertaken over the years to gain acceptance of its products and services, such that Defendant is taking a free ride on Chevron's well-known and valuable marks.

32. Defendant's ongoing unauthorized use of the Chevron Trademarks damages Chevron's goodwill by falsely associating those marks with Defendant and unjustly enriches Defendant at Chevron's expense.

33. Defendant's continued unauthorized use of the Chevron Trademarks has caused, and will continue to cause, harm to Chevron's reputation, goodwill, and business opportunities. Defendant is causing Chevron irreparable damage and harm for which there is no adequate remedy at law.

## COUNT I
### (Counterfeiting of Federally Registered Trademarks under 15 U.S.C. §§ 1114, 1116)

34.     Chevron repeats and realleges, as if fully set forth here, each and every allegation contained in the paragraphs above.

35.     Defendant's unauthorized use of the Chevron Trademarks in connection with the sale of products as described above constitutes use in commerce of a counterfeit mark in violation of Sections 32 and 34 of the Lanham Act, 15 U.S.C. §§ 1114 and 1116.

36.     Defendant's actions, as described herein, were undertaken with full knowledge of Chevron's rights, and continued after notice, thus constituting willful counterfeiting.

37.     Chevron is entitled to the remedies available under 15 U.S.C. §§ 1116 and 1117 to address the willful counterfeiting by Defendant. Such remedies include treble damages, statutory damages, and recovery of attorneys' fees.

38.     The acts of Defendant described above have caused and, without judicial intervention, will continue to cause Chevron irreparable harm for which there is no adequate remedy at law.

## COUNT II
### (Infringement of Federally Registered Trademarks under 15 U.S.C. §§ 1114)

39.     Chevron repeats and realleges, as if fully set forth here, each and every allegation contained in the paragraphs above.

40.     Defendant's unauthorized use of the Chevron Trademarks in connection with their business as described above constitutes use in commerce of a

reproduction of a registered mark that is likely to cause confusion and mistake and to deceive consumers as to the source or origin of Defendant's products and services and/or Defendant's business in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

41.     Defendant's unauthorized use of the Chevron Trademarks as described above constitutes infringement of Chevron's federally registered trademarks in violation of Sections 32 and 34 of the Lanham Act, 15 U.S.C. § 1114.

42.     Defendant's actions as described here were undertaken with full knowledge of Chevron's rights, and continued after notice, thus constituting willful infringement.

43.     Defendant used the Chevron Trademarks with full knowledge of Chevron's rights, and in bad faith with willful and deliberate intent to trade on Chevron's substantial recognition, reputation, and goodwill. In view of the willful nature of Defendant's infringement, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a), entitling Chevron to recover fees, among other monetary remedies.

44.     The acts of Defendant described above have caused and, without judicial intervention, will continue to cause Chevron irreparable harm for which there is no adequate remedy at law.

## COUNT III
### (Unfair Competition and False Advertising under 15 U.S.C. § 1125(a))

45. Chevron repeats and realleges, as if fully set forth here, each and every allegation contained in the paragraphs above.

46. The acts of Defendant described above constitute unfair competition and false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

47. Defendant has used and is using without authorization the Chevron Trademarks in commercial advertising and promotion.

48. Defendant has made and is making false express and implied representations that they are authorized to sell Chevron Bulk Products and/or that the bulk products they sell are genuine Chevron products subject to Chevron quality control procedures and specific Chevron warranties, so as to create a likelihood of confusion among customers, thereby inducing beliefs regarding Defendant's business and/or the products sold by Defendant that are contrary to fact.

49. Defendant's unauthorized use in commerce of the Chevron Trademarks constitute a false designation of origin and false and misleading representation of fact that is likely to confuse or deceive customers or cause customers to believe mistakenly that Defendant and/or its products and services are offered by Chevron, or are otherwise warranted by, affiliated, connected, associated with, or sponsored or approved by Chevron.

50. Defendant's unauthorized use in commerce of the Chevron Trademarks in connection with Defendant's marketing, distribution, promotion, and sale to the

15

consuming public of services and goods (specifically lubricant products) constitute a misappropriation of the distinguishing and identifying features of the Chevron Trademarks that Chevron created through substantial effort and expense.

51.     Defendant's unauthorized use of the Chevron Trademarks also constitutes use in commerce of a false or misleading designation of origin which is likely to deceive, to cause mistake, or to cause confusion by leading consumers to believe that Defendant has an affiliation with Chevron, or its products are warranted by, sponsored or approved of by Chevron, or are otherwise associated with, or have obtained permission from Chevron.

52.     Defendant's actions constitute violations of 15 U.S.C. § 1125(a) in that such false designation and representations of origin and quality are used on or in connection with the services and products that Defendant causes to enter into or to affect interstate commerce.

53.     Defendant's actions as described above were undertaken with full knowledge of Chevron's rights, and continued after notice, thus constituting willful unfair competition and false advertising.

54.     Defendant's unauthorized use in commerce of the Chevron Trademarks constitutes unfair competition and false advertising pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

55.     In view of the willful nature of Defendant's unfair competition and false advertising, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a), entitling Chevron to recover fees, among other monetary remedies.

56.     The acts of Defendant described above have caused and, without judicial intervention, will continue to cause Chevron irreparable harm for which there is no adequate remedy at law.

## COUNT IV
### (Dilution under 15 U.S.C. § 1125(c))

57.     Chevron repeats and realleges, as if fully set forth here, each and every allegation contained in the paragraphs above.

58.     This claim arises under federal law for trademark dilution with regard to the Chevron Trademarks.

59.     The Chevron Trademarks are famous and distinctive, inherently or through acquired distinctiveness, throughout the United States.

60.     Defendant's unauthorized commercial use of the Chevron Trademarks began after the marks became famous.

61.     Defendant's unauthorized use of the Chevron Trademarks is likely to cause the dilution of said marks by blurring and/or tarnishment.

62.     The acts of Defendant described above constitute dilution under federal law in violation of 15 U.S.C. § 1125(c).

63.     In view of the willful nature of Defendant's dilution by blurring and/or tarnishment, this is an exceptional case within the meaning of 15 U.S.C. §§ 1117(a) and 1125(c)(5), entitling Chevron to recover fees, among other monetary remedies.

64.     The acts of Defendant described above have caused and, without judicial intervention, will continue to cause Chevron irreparable harm for which there is no adequate remedy at law.

## COUNT V
### (Unfair Competition under Texas Common Law)

65.    Chevron repeats and realleges, as if fully set forth here, each and every allegation contained in the paragraphs above.

66.    This claim arises under Texas common law for unfair competition, namely the unauthorized and confusing use of the Chevron Trademarks in a manner designed to misrepresent Defendant's affiliation with Chevron.

67.    Defendant's unauthorized use of the Chevron Trademarks in Texas constitutes passing off and creates a likelihood of confusion, mistake, or deception.

68.    By reason of Defendant's wrongful acts alleged above, Chevron has suffered and will continue to suffer damage to business, trade, reputation, and goodwill as a result of the erroneous perception that the goods and services of Defendant is affiliated with, sponsored by, approved by, or originate from Chevron.

69.    The acts of Defendant described above constitute unfair competition in violation of Texas common law.

70.    Defendant's actions as described above were undertaken with full knowledge of Chevron's rights, and continued after notice, thus constituting willful unfair competition.

71.    The acts of Defendant described above have caused and, without judicial intervention, will continue to cause Chevron irreparable harm for which there is no adequate remedy at law.

## COUNT VI
### (Dilution under Tex. Bus. & Com. Code § 16.103)

72. Chevron repeats and realleges, as if fully set forth here, each and every allegation contained in the paragraphs above.

73. This claim arises under Texas law for trademark dilution with regard to the Chevron Trademarks.

74. The Chevron Trademarks are famous and distinctive, inherently or through acquired distinctiveness, in Texas and elsewhere throughout the world.

75. Defendant's infringing commercial use of the Chevron Trademarks began after the Chevron Trademarks became famous.

76. Defendant's infringing commercial use of the Chevron Trademarks is likely to cause dilution of Chevron's famous marks.

77. The acts of Defendant described above constitute dilution under Texas law in violation of Tex. Bus. & Com. Code § 16.103.

78. The acts of Defendant described above have caused and, without judicial intervention, will continue to cause Chevron irreparable harm for which there is no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Chevron prays that this Court enter final judgment and preliminary and permanent injunctive relief in favor of Chevron and against Defendant, as follows:

A.      awarding Chevron its compensatory, consequential, statutory, and special damages (trebled) including, without limitation, its lost profits, Defendants' profits, loss of goodwill and damage to its reputation, as well as exemplary damages, together with pre- and post-judgment interest, as provided by law;

B.      awarding Chevron its reasonable attorneys' fees and costs associated with this action;

C.      granting permanent injunctive relief in favor of Chevron and against Defendant enjoining Defendant from engaging in the unlawful practices described in this Complaint;

D.      requiring Defendant, pursuant to the Lanham Act, to deliver to Chevron or destroy its entire inventory of Chevron Bulk Products and labels bearing or infringing the Chevron Trademarks or a confusingly similar copy thereof; and

E.      granting such further relief as this Court deems just and proper.

August 16, 2019

Respectfully Submitted,

By: /s/ Abby L. Parsons

R. Bruce Hurley
Attorney In Charge
Texas Bar No. 10311400
S.D. Tex. Fed. ID No. 12335
Craig Stanfield
Texas Bar No. 24051371
S.D. Tex. Fed. ID No. 789722
Christie Cardon
Texas Bar No. 24036326
S.D. Tex. Fed. ID No. 567834
Abby L. Parsons
Texas Bar No. 24094303
S.D. Tex. Fed. ID No. 2618689
**KING & SPALDING LLP**
1100 Louisiana St., Ste. 4000
Houston, Texas 77002
(Tel): 713-751-3200
(Fax): 713-751-3900
bhurley@kslaw.com
cstanfield@kslaw.com
ccardon@kslaw.com
aparsons@kslaw.com

*Of Counsel:*

Kathleen E. McCarthy
**KING & SPALDING LLP**
1185 Avenue of the Americas
New York, New York 10036
Tel: (212) 556-2345
Fax: (212) 556-2222
kmccarthy@kslaw.com

*Attorneys for Plaintiffs*
*Chevron Intellectual Property LLC*
*Chevron U.S.A. Inc.*

21

## CERTIFICATE OF SERVICE

I certify that on August 16, 2019, I electronically filed the foregoing document

with the Clerk of the Court using the CM/ECF system which automatically sends

e-mail notification of such filing to all counsel of record.


*/s/ Abby L. Parsons*
*Attorney for Plaintiffs*
*Chevron Intellectual Property LLC &*
*Chevron U.S.A. Inc.*

22

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

Chevron Intellectual Property
LLC, and Chevron U.S.A. Inc.,

     Plaintiffs,

v.

AEG Petroleum LLC, and
Hansford Supply, Inc.,

     Defendants.

Case No. 4:18-cv-3133

## DECLARATION OF TODD PITTS

    1.    My name is Todd Pitts. I am over the age of 21 and competent to give this declaration. The facts stated here are based on my personal knowledge and the attached documents.

    2.    I am an Account Manager for Western Marketing Inc. ("WMI"). Headquartered in Abilene, Texas, WMI is a leading regional supplier of bulk and packaged lubricants primarily for transportation, agriculture, and energy pumping and gathering systems. I am a trained professional sales representative for WMI, and manage relationships

with WMI customers in several North Texas counties and adjacent counties in parts of Oklahoma, Colorado, Kansas, and New Mexico.

3.      WMI has for several decades been an authorized Chevron "Lubrication Marketer" ("LM"). Chevron's line of bulk lubrication products includes Delo, HDAX, HAVOLINE, and URSA products (together, referred to as "Chevron Bulk Products").

4.      As an authorized LM, WMI was permitted to take on Associate Lubrication Marketers ("ALMs"), including for purposes of servicing customers in remote locations or capitalizing on an ALM's existing relationships with particular customers.  I work with WMI's authorized ALMs within my territory. AEG Petroleum LLC ("AEG") became affiliated with WMI as an ALM for Chevron Bulk Products within my territory in February 2011. I worked directly with AEG during its term as an ALM of Chevron Bulk Products for WMI.

5.      In late 2016, I received reports from several of WMI's ALMs in the Texas panhandle that AEG was selling Delo at below market price. AEG was purchasing all Chevron products in its inventory from WMI, but had not purchased any Delo from us, so I knew that they were not authorized to offer that product for sale.

2

6.      I shared these reports with Chuck Beago, a Chevron lubricants business consultant working directly with WMI. In late 2016, Chuck and I met with Patrick Gomez of AEG at AEG's facilities in Amarillo to address their purported sales of Delo. Mr. Gomez told us that as a result of driver error, another product had been mislabeled and sold as Delo. Mr. Gomez promised that AEG would address the situation.

7.      However, problems with AEG persisted. I continued to receive reports from ALMs concerning AEG selling Chevron Bulk Lubricants at below market price. Because AEG would not acknowledge or address these issues, I advised Mr. Gomez by phone in March 2017 that WMI was terminating its ALM relationship with AEG. WMI stopped selling and delivering Chevron Bulk Products to AEG when the ALM relationship ended in March 2017.

8.      In early 2018, I received reports from certain of WMI's ALM's that AEG was offering Chevron Bulk Products for sale. AEG was no longer an ALM of WMI and was therefore not authorized to sell any Chevron products.

3

9.    On March 30, 2018, I obtained from a Panhandle area engine services end-user a sample of a bulk product sold by AEG that purported to be HDAX 3200. I also obtained from this business the invoice that it received from AEG for the sale of that product. The invoice from AEG is attached as Exhibit 1. I sent two samples of the product to ALS Global in Phoenix for product-specification testing in accordance with the LubeWatch® protocol that ALS is authorized to administer for Chevron. Specifically, I asked them to test whether the two samples matched Chevron's HDAX 3200 or 5200. The April 2, 2018 reports that I received from ALS for sample Nos. 44021792332 and 44021792333 both state that the samples tested were "different from HDAX 3200 and HDAX 5200." *See* attached Exhibits 2 and 3, respectively.

10.    Also in early 2018, I advised Mr. Beago that Hansford Supply Inc. ("Hansford") in Gruver, Texas, an AEG customer, was selling and offering to sell purported Chevron Bulk Products, including HDAX and URSA. Hansford has never been a Chevron LM or an ALM of a Chevron LM.

4

11.   In April 2018, Mr. Beago and I met with Hansford owner Bob Tolleson at Hansford's facility. Mr. Tolleson confirmed that Hansford had purchased the bulk lubricant products from AEG, who represented that they were HDAX 3200 and URSA 1540. Additionally, Mr. Beago and I saw bulk storage tanks with Chevron drum labels for URSA 1540 and HDAX 3200. Chevron does not permit drum labels to be affixed to bulk storage tanks. In addition, the label for HDAX 3200 was a photocopy, not an actual label. Attached as Exhibit 4 are true and correct copies of three photographs of the non-conforming labels and the bulk storage tanks to which they were affixed. I am aware that WMI lost customers as a result of these unauthorized sales to Hansford.

12.   I was later able to obtain from a WMI customer an AEG pricing schedule dated June 8, 2018. *See* attached Exhibit 5. The pricing schedule quotes a price for Chevron HDAX 3200 low ash 40W and Chevron HDAX 3200 low ash 30W. The pricing schedule bears the signatures of Jake Grubb (AEG Sales Representative) and Quint Brown (AEG Dalhart Manager).   Attached to the pricing schedule is a New Customer Packet with Credit Application, Customer Fuel Authorization Form, and related documents. The Customer Fuel Authorization Form

5

lists Chevron bulk products Delo 15/40 and HPLX LA 30 under the "Product Selection" section of the form. As of the date of the pricing schedule and New Customer Packet, AEG was not an authorized Chevron ALM and therefore had no basis to provide this information to anyone.

13.   As an authorized Chevron LM, WMI is authorized to generate Chevron product labels at WMI's facilities. At some point after visiting Hansford in April 2018, I determined in consultation with WMI employees who staff the front counter of our Amarillo location that individuals representing that they were with AEG came to our Amarillo location, and without my knowledge or authorization (because AEG was no longer an authorized ALM), requested and were able to get additional Chevron bulk product labels. The WMI employees with whom they dealt were unaware that AEG had previously been terminated as an ALM. On information and belief, AEG has used these ill-gotten labels on products of unknown origin that AEG sold to its customers after WMI terminated AEG as a Chevron ALM.

6

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed in Amarillo, Texas on October 9, 2018.

_Todd Pitts_

Todd Pitts

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

Chevron Intellectual Property LLC, and
Chevron U.S.A. Inc.,

        Plaintiffs,

           v.                        Case No. 4:18-cv-3133

AEG Petroleum LLC, and Hansford
Supply, Inc.

        Defendants.

# EXHIBIT 1



**AEG PETROLEUM LLC**

*Gasoline · Diesel · Lubricants*

P.O. Box 1003          Amarillo, Tx 79105
Phone:  806-322-7000     Fax:   806-322-1380

| | |
|---|---|
| Page : | 1 |
| Invoice No : | 66319 |
| Invoice Date: | 02/08/2018 |
| Ship Date: | 02/08/2018 |
| Due Date: | 03/10/2018 |

**Sold To:**



**Ship To:**

| Account #: | | PO Number: | | Terms: | NET 30 |
|---|---|---|---|---|---|
| Ship Via: | CUSTOM | Sales Id: | | Bol No: | |

| Product Description | Quantity | Price | Amount |
|---|---|---|---|
| BULK-CHEVRON HDAX 3200 LA 40 | 275.00 | 10.980000 | 3,019.50 |
| BULK-BLUE MTN LL A/F 50/50 | 225.00 | 5.200000 | 1,170.00 |

For billing questions, please email your account representative
at accounting@aegpetroleum.com. Thank you for your business!!!

Ticket # 19014

| | |
|---|---|
| Subtotal | 4,189.50 |
| Sales Tax 8.25% | 0.00 |
| Total | 4,189.50 |

Invoice Total Due on 03/10/2018

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| Chevron Intellectual Property LLC, and Chevron U.S.A. Inc., | |
| Plaintiffs, | |
| v. | Case No. 4:18-cv-3133 |
| AEG Petroleum LLC, and Hansford Supply, Inc. | |
| Defendants. | |

# EXHIBIT 2

# LubeWatch ®
## Maintenance Management System

## UIN 066EF89

### New Oil

**Unit No.** HDAX 5200

Unit:
Make
Model
Serial No.
Site

---

**Compartment:**
**Name** New Oil

**Make**
**Model**
**Serial No.**
**Capacity:**

---

**Customer:**
WESTERN MARKETING - TODD PITTS
1201 Ne 3rd Street
Amarillo TX 79107
USA

## DIAGNOSIS

New oil. Diagnosis not applicable. Test results indicate this oil is different from HDAX 3200 and HDAX 5200.

| | |
|---|---|
| DATE RECEIVED | 30-Mar-18 |
| DATE REPORTED | 02-Apr-18 |
| LAB NO. | 44021792332 |
| SIF NO. | 33787210 |
| TIME ON UNIT | |
| TIME ON OIL | |
| OIL BRAND | Unidentified |
| OIL TYPE | Unidentified |
| OIL GRADE | Unknown |
| OIL ADDED | |
| FILTER | Not Applicable |
| OIL CHANGED | |
| WO NUMBER | |

**Metals (ppm)**

| | |
|---|---|
| Iron (Fe) | <1 |
| Chromium (Cr) | <1 |
| Lead (Pb) | <1 |
| Copper (Cu) | <1 |
| Tin (Sn) | <1 |
| Aluminium (Al) | <1 |
| Nickel (Ni) | <1 |
| Silver (Ag) | <1 |
| Titanium (Ti) | <1 |
| Vanadium (V) | <1 |

**Contaminants (ppm)**

| | |
|---|---|
| Silicon (Si) | 5 |
| Sodium (Na) | 2 |
| Potassium (K) | 4 |

**Additives (ppm)**

| | |
|---|---|
| Magnesium (Mg) | 15 |
| Calcium (Ca) | 2168 |
| Barium (Ba) | <1 |
| Phosphorus (P) | 844 |
| Zinc (Zn) | 919 |
| Molybdenum (Mo) | 141 |
| Boron (B) | 137 |

**Contaminants**

| | |
|---|---|
| Water (%) | <0.05 |

**Physical Tests**

| | |
|---|---|
| Viscosity (cSt 100C) | 13.6 |
| Viscosity (cSt 40C) | 117.6 |

**Physical / Chemical**

| | |
|---|---|
| Acid Number (mgKOH/g) | 1.95 |
| Oxidation (Abs/0.1mm) E2412/D7414 | 7 |



**ANALYST:** Stan.Leitz


Normal

**LEGEND**


Severe


Abnormal


Caution


Normal


**(800) LUBE-808**

Page 1 of 2

# LubeWatch®
## Maintenance Management System

**(800) LUBE-808**



### UIN 066EF89

**U.S. Laboratories**

**Atlanta, Georgia - 420**
3121 Presidential Drive
Atlanta, GA 30340
800.394.3669

**Valley View, Ohio - 410**
6180 Halle Dr. Suite D
Valley View, OH 44125
800.726.5400

**Kansas City, Kansas - 430**
935 Sunshine Road
Kansas City, KS 66115
800.332.8055

**Phoenix, Arizona - 440**
3319 West Earll Drive
Phoenix, AZ 85017
800.445.7930

**Portland, Oregon - 401**
4943 NW Front Avenue
Portland, OR 97210
800.770.4128

**Sparks, Nevada - 400**
1375 Greg Street, Suite 104
Sparks, NV 89431
800.524.7848

**Canadian Laboratories**

**Burlington, Ontario - 450**
1240 Burloak Drive, Unit 6
Burlington, ON L7L 6B3
877.732.9559

**Edmonton, Alberta - 402**
10717-176 Street
Edmonton, AB T5S 1K1
888.489.0057

**Sales & Marketing**
**Houston, Texas**
10450 Stancliff Road, Suite 210
Houston, TX 77099
877.835.8437

**International Locations**

**Australia**
Brisbane, Perth, Sydney, Muswellbrook

**South America**
Santiago de Chile

**New Zealand**
Wellington

**Southeast Asia**
Kuala Lumpur, Singapore

**Europe**
Prague

| TEST METHODS: | |
|---|---|
| Acid Number: | ASTM D974/D664 (*M) |
| Base Number: | ASTM D4739 (*M) |
| Base Number (Perchloric): | ASTM D2896 |
| Fuel Dilution by GC: | ASTM D7593 |
| Fuel Dilution Visc/Setaflash | ASTM D445/D7279/D3828 |
| Fuel Soot ATR/IR: | ASTM D7686 (*M) |
| Soot by FTIR: | ASTM D7844 |
| Glycol: | ASTM D2982 |
| Metals by ICP AES: | ASTM D5185 (*M) |
| Ox, NOx, SOx, FTIR: | ASTM D7418/D7414/D7415 D7624 |
| PQ Index: | ASTM D8120 (*M) |
| Particle Count: | ASTM D7647 (*M) / ISO 4406 |
| Viscosity: | ASTM D445 / D7279 |
| Water KF: | D6304C / E203 (*M) |
| Water Crackle: | In House |
| | *M - Modified Method |

Since services are based on samples and information supplied by others, and since corrective actions, if any, are necessarily taken by others, these services are rendered without any warranty or liability of any kind beyond the actual amount paid to ALS Tribology for the services. Reported recommendations are based on interpretations of the generated test results and historical data. Certain test results appearing in this report may have been tested at other ALS laboratories within the Tribology divisional network.

Western Marketing Chevron
Attn: Tony Ballard
1010 South Access Rd
Tye TX 79563
USA

0004 v1.7

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

Chevron Intellectual Property LLC, and
Chevron U.S.A. Inc.,

      Plaintiffs,

        v.

Case No. 4:18-cv-3133

AEG Petroleum LLC, and Hansford
Supply, Inc.

      Defendants.

# EXHIBIT 3

# LubeWatch ®
## Maintenance Management System

## UIN 066EF8A

### New Oil

**Unit No.**  HDAX 3200

**Unit:**
**Make**
**Model**
**Serial No.**
**Site**

**Compartment:**
**Name**  New Oil

**Make**
**Model**
**Serial No.**
**Capacity:**

**Customer:**
WESTERN MARKETING - TODD PITTS
1201 Ne 3rd Street
Amarillo TX 79107
USA

## DIAGNOSIS

New oil. Diagnosis not applicable. Test results indicate this oil is different from HDAX 3200 and HDAX 5200.

| | |
|---|---|
| DATE RECEIVED | 30-Mar-18 |
| DATE REPORTED | 02-Apr-18 |
| LAB NO. | 44021792333 |
| SIF NO. | 33787212 |
| TIME ON UNIT | |
| TIME ON OIL | |
| OIL BRAND | Unidentified |
| OIL TYPE | Unidentified |
| OIL GRADE | Unknown |
| OIL ADDED | |
| FILTER | Not Applicable |
| OIL CHANGED | |
| WO NUMBER | |

**Metals (ppm)**
| | |
|---|---|
| Iron (Fe) | 1 |
| Chromium (Cr) | <1 |
| Lead (Pb) | <1 |
| Copper (Cu) | <1 |
| Tin (Sn) | <1 |
| Aluminium (Al) | <1 |
| Nickel (Ni) | <1 |
| Silver (Ag) | <1 |
| Titanium (Ti) | <1 |
| Vanadium (V) | <1 |

**Contaminants (ppm)**
| | |
|---|---|
| Silicon (Si) | 5 |
| Sodium (Na) | 2 |
| Potassium (K) | 5 |

**Additives (ppm)**
| | |
|---|---|
| Magnesium (Mg) | 15 |
| Calcium (Ca) | 2196 |
| Barium (Ba) | <1 |
| Phosphorus (P) | 851 |
| Zinc (Zn) | 927 |
| Molybdenum (Mo) | 143 |
| Boron (B) | 138 |

**Contaminants**
| | |
|---|---|
| Water (%) | <0.05 |

**Physical Tests**
| | |
|---|---|
| Viscosity (cSt 100C) | 13.5 |
| Viscosity (cSt 40C) | 121.8 |

**Physical / Chemical**
| | |
|---|---|
| Acid Number (mgKOH/g) | 1.98 |
| Oxidation (Abs/0.1mm) E2412/D7414 | 7 |



**ANALYST:** Stan.Leitz

     

LEGEND

Normal | Severe | Abnormal | Caution | Normal

 **(800) LUBE-808**





Case 4:18-cv-03133   Document 28-4   Filed in TXSD on 10/09/18   Page 3 of 4



Case 4:18-cv-03133   Document 28-4   Filed in TXSD on 10/09/18   Page 4 of 4



**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| Chevron Intellectual Property LLC, and Chevron U.S.A. Inc., | |
| Plaintiffs, | |
| v. | Case No. 4:18-cv-3133 |
| AEG Petroleum LLC, and Hansford Supply, Inc. | |
| Defendants. | |

# EXHIBIT 5

# AEG PETROLEUM LLC

*Gasoline • Diesel • Lubricants*
*101 SE 11ᵀᴴ AVE, SUITE 300, AMARILLO TX 79101*
*P O BOX 1003, AMARILLO TX 79105*
*PHONE: (806) 322-7000  FAX: (806) 322-1380*

June 8, 2018

AEG Petroleum Lubricants:

| | | |
|---|---|---|
| • Citgo Citgard 600 SAE 15W/40 | $7.98/gallon |
| • Citgo Transgard Tractor Hydraulic | $6.80/gallon |
| • Chevron HDAX 3200 Low Ash 30W | $7.67/gallon |
| • Chevron HDAX 3200 Low Ash 40W | $7.95/gallon |
| • Drip Oil | $3.20/gallon |
| • Diesel Exhaust Fluid | $1.80/gallon |

These will be the delivered prices with equipment provided with the use of AEG Petroleum Lubricants. Prices are subject to market changes. If you have any questions or if there is anything else I can help you with please let me know.

Sincerely,

Jake Grubb
Sales Representative
806.654.0042
jake@aegpetroleum.com

Quint Brown
Dalhart Manager
806.324.3927
quint@aegpetroleum.com





# AEG PETROLEUM LLC

### Gasoline · Diesel · Lubricants

*101 SE 11TH AVE, SUITE 300, AMARILLO TX 79101*
*P O BOX 1003, AMARILLO TX 79105*
*PHONE: (806) 322-7000 FAX: (806) 322-1380*

# NEW CUSTOMER PACKET

## Credit Package Content/Instructions

As requested, attached are the following:

1. Credit Application.
2. Disclosure Authorization.
3. A separate Authorization Agreement for Pre-Arranged Payments
4. Personal Guaranty
5. Product Title

Each of the above documents must be fully and correctly completed and executed by all authorized persons and returned to AEG, but the Authorization Agreement for Pre-Arranged Payments applicable to you or your entity only needs to be executed and sent to AEG.

Each owner of a partnership interest, corporation, limited liability company, or other entity must complete and sign and return to AEG a separate Personal Guaranty.

Also attached is the AEG Privacy Policy.

The following additional information must be included with the above documents:

- *Business financial Statements for the most recent two years.*
- *Most recent personal financial statement.*
- *Personal financials are required for partners of partnerships and proprietorships.*
- *All applicable state and federal tax exemption certificates for gasoline and diesel.*
- *A voided check or deposit slip for Buyer's bank account to be used for payments to AEG.*

Hard copies of each of the executed documents must be sent to:   AEG Petroleum, LLC
Attn: Credit Department
P.O. Box 1003
Amarillo, Texas 79105

Electronic versions of the executed documents will **NOT** be accepted.

If you have more than three owners or you need additional space, please attach additional sheets with the correct information.

Unless all of the above documents are properly completed, executed, and delivered to AEG, credit will not be approved.

For any questions concerning the credit package please contact AEG Petroleum, LLC at (806) 322-7000 or info@aegpetroleum.com.

1

# AEG PETROLEUM LLC

### Gasoline • Diesel • Lubricants

*101 SE 11TH AVE, SUITE 300, AMARILLO TX 79101*
*P O BOX 1003, AMARILLO TX 79105*
*PHONE: (806) 322-7000 FAX: (806) 322-1380*

## PRIVACY POLICY

### We Are Committed to Safeguarding Buyer Information

In order to better serve your needs now and in the future, we may ask you to provide us with certain information. We understand that you may be concerned about what we will do with such information — particularly any personal or financial information. We agree that you have a right to know how we will utilize the personal information you provide to us. Therefore, we have adopted this Privacy Policy to govern the use and handling of your personal information.

### Applicability

This Privacy Policy governs our use of the information which you provide to us. It does not govern the manner in which we may use information we have obtained from any other source, such as information obtained from a public record or from another person or entity.

### Types of Information

The types of nonpublic personal information that we may collect include:

- Information we receive from you on applications, forms, questionnaires, and in other communications to us, whether in writing, in person, by telephone, or any other means;
- Credit Agreements; and
- Information we receive from a consumer reporting agency, government agencies, banks, lending institutions, vendors, suppliers, and other entities disclosing information to us concerning credit history, financial ability to pay, and other financial information.

### Use of Information

We will not release your information except (1) as necessary for us to provide the service you have requested of us or (2) as permitted by law. We may, however, store such information indefinitely.

### Confidentiality and Security

We will use our best efforts to ensure that no unauthorized parties have access to any of your information. We restrict access to nonpublic personal information about you to those individuals and entities who need to know that information to provide services to you. We will use out best efforts to train and oversee our employees and agents to ensure that your information will be handled responsibly and in accordance with this Privacy Policy. We currently maintain physical, electronic, and procedural safeguards that comply with federal and state regulations to guard your nonpublic personal information.

2

# AEG PETROLEUM LLC

### Gasoline · Diesel · Lubricants

101 SE 11TH AVE, SUITE 300, AMARILLO TX 79101
P O BOX 1003, AMARILLO TX 79105
PHONE: (806) 322-7000 FAX: (806) 322-1380

PLEASE PRINT OR TYPE

## CREDIT APPLICATION

Date: _____, 20_____

---

**TYPE OF ACCOUNT:** (Check if applicable)

Wholesale: _____     Retail: _____

---

Exact Business Name/ Name Under Which Account Will Be Carried: (Include DBA) (herein called **Buyer**)

_____

Business Phone Number: (_____) _____ - _____     Contact Person: _____

E-mail Address: _____     Web Site: _____

**BUSINESS ADDRESSES:**

      **MAILING**                              **PHYSICAL**

_____       _____

_____       _____

_____       _____

Zip Code: _____       (Fax) Number: (_____) _____ - _____

If Buyer has a Parent Company, Provide Name and Address of Parent Company:

_____

_____

_____

**Please check the appropriate box:**

| | | |
|---|---|---|
| [__] Proprietorship | [__] Municipality | Names of Officers/Partners/Members/Owners: |
| [__] Partnership | [__] County | |
| [__] Corporation | [__] Other: _____ | _____ [Title] |
| [__] Limited Liability Company | | _____ [Title] |

3

U:\Document Store\LLC\AEG PETROLEUM, LLC\Credit Application - 12-03-2013 @ 2.30.docx

## Credit Application (cont.)

TIN/SSN: _____

_____
[Title]

_____
[Title]

_____
[Title]

### FOR PERSONAL ACCOUNTS, PARTNERSHIPS, AND SOLE PROPRIETOR ACCOUNTS:

| | | |
|---|---|---|
| Owner's Name(s) | (1) _____ | SSN: _____-_____-_____ |
| | (2) _____ | SSN: _____-_____-_____ |
| | (3) _____ | SSN: _____-_____-_____ |
| Owner's Address | (1) _____ | (2) _____ |

Home Phone No.: (_____) _____-_____        (_____) _____-_____

Owner's Address: (3) _____

Home Phone No (_____) _____-_____

**If more than three owners, please attach an additional sheet with the requested information.**

### BACKGROUND INFORMATION:

Nature of Your Business: _____

How Many Years Under Current Ownership: _____

| Current Main Supplier of Fuel | : | Name: | _____ |
|---|---|---|---|
| | | Address: | _____ |
| | | Phone No.: | _____ |
| | | E-mail: | _____ |

4

## Credit Application (cont.)

**BANKING INFORMATION:**

Name of Bank: _____  Phone No.  (____) _____- _____

Mailing Address: _____

Bank Officer for Your Account: _____

**CREDIT REQUEST:**

Monthly Credit Requirements: $ _____ Gallons _____

TIN/SSN: _____

DUNS Number: _____ Rating _____

**TRADE REFERENCES**

| Company Name | Address | Acct. No. | Fax No. |
|---|---|---|---|
| _____ | _____ | _____ | (___) ____-_____ |
| _____ | _____ | _____ | (___) ____-_____ |
| _____ | _____ | _____ | (___) ____-_____ |
| _____ | _____ | _____ | (___) ____-_____ |
| _____ | _____ | _____ | (___) ____-_____ |

**BUYER AGREES THAT ALL PURCHASES FROM AEG PETROLEUM, LLC, A TEXAS LIMITED LIABLITY COMPANY (AEG) ARE SUBJECT TO THE FOLLOWING TERMS AND CONDITIONS:**

1. Buyer promises to pay AEG full invoice price according to the terms of the invoice.
2. Buyer promises to pay AEG for all purchases of products made by Buyer's employees and agents on behalf of Buyer.
3. All purchases are due and payable in full net 10 days upon date of an invoice. Invoices not paid within 10 days of the due date will bear interest at the rate of the lesser of (i) 18.0% per annum or (ii) the maximum lawful rate of interest.
4. All payments received will be applied first to fees and costs of collection, if any, then to accrued and unpaid interest and then in reduction of the outstanding principal balance.
5. AEG may cease extending credit to Buyer at any time and for any reason without notice to Buyer.
6. In no event will Buyer be liable or required to pay any service charge, interest, or any other charge which by law may be considered interest greater than the maximum rate of interest permitted by law.
7. The provisions of this Agreement are severable. If a court of competent jurisdiction finds that any provision of this Agreement is unenforceable, then the remaining provisions will remain in effect without the unenforceable parts
8. Buyer grants AEG a purchase money security interest in all products purchased from AEG. This Agreement is a security agreement under the Uniform Commercial Code.
9. This Agreement is governed by the laws of the State of Texas. Venue for enforcement of this Agreement is in Amarillo, Potter County, Texas.
10. If AEG commences legal proceedings against Buyer to enforce this Agreement, AEG will be entitled to receive reimbursement from Buyer of an amount equal to AEG's actual reasonable attorney's fees, attorney's disbursements, and court costs in those legal proceedings.
11. The parties may amend this Agreement only by signing a written document.
12. This Agreement contains the entire agreement between the parties.
13. Whenever the context requires, the singular includes the plural, the plural the singular, and the use of any gender includes all genders.
14. Buyer authorizes all credit reporting agencies, government agencies, banks, lending institutions, vendors, suppliers, and other entities to fully disclose to AEG Buyer's credit history, financial ability to pay, and other financial information requested by AEG, even if such information would otherwise be protected by financial privacy acts.

5

**Credit Application (cont.)**

Has the business or any owner of the business ever filed bankruptcy?  [_____] Yes      [_____] No

If YES:  (i)    When?
         (ii)   State and federal district:    _____
         (iii)  Bankruptcy Case No.:           _____
                                               _____

## NOTICE TO BUYER: DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT. YOU ARE ENTITLED TO A COPY OF THE AGREEMENT TO PROTECT YOUR LEGAL RIGHTS.

<u>For partnerships, all partners must sign below.</u>

<u>For corporations and limited liability companies, an authorized officer or member must sign below.</u>

_____
Partnership Name (Buyer)

_____
Entity Name (Buyer)

By:_____, Partner
   Printed Name:_____

By:_____
   Printed Name:_____
   Title:_____
Date:   _____

By:_____, Partner
   Printed Name:_____

By:_____, Partner
   Printed Name:_____

**Account Name (individual)**
Printed Name:_____

Date:_____

Date:   _____

6

# AEG PETROLEUM LLC

### Gasoline · Diesel · Lubricants

*101 SE 11TH AVE, SUITE 300, AMARILLO TX 79101*
*P O BOX 1003, AMARILLO TX 79105*
*PHONE: (806) 322-7000 FAX: (806) 322-1380*

## PERSONAL GUARANTEE

In consideration of any extension of credit, loan, or other financial accommodation heretofore, now or hereafter made to _____ ("Account Debtor") by AEG Petroleum LLC ("AEG"), the undersigned hereby guarantees absolutely and unconditionally the prompt payment when due, and at any time thereafter, of all indebtedness and obligations of every kind and nature of Account Debtor to AEG, absolute or contingent, due or to become due, now or hereafter existing (the "Indebtedness"), and in addition, the undersigned agrees to pay all expenses, including attorney's fees and legal expenses, paid or incurred by AEG to collect the Indebtedness, or any part thereof, and to enforce this guaranty. The undersigned also further agrees that all payments and obligations of Guarantor are performable in Potter County, Texas. Guarantor further agrees that the laws of the State of Texas shall govern this contract between AEG and Guarantor and also govern any transactions made between AEG, Account Debtor and/or Guarantor. Applicant further agrees to waive personal jurisdiction and venue in any dispute arising from, or relating to, the sale or goods or services by AEG to Account Debtor and/or the enforcement of this Personal Guarantee and agrees that any dispute between AEG, Account Debtor and/or Guarantor shall be exclusively resolved in the Courts of Potter County, Texas.

The liability of the undersigned under this guaranty shall in no way be affected, by any compromise, waiver, settlement, change, subordination, modification or disposition of the Indebtedness, and in order to hold the undersigned liable hereunder, there shall be no obligation on the part of AEG at any time to resort first for payment to the Account Debtor, or any other guarantor, and AEG shall have the right to enforce this guaranty irrespective of whether or not proceedings or steps are being taken against any party primarily or secondarily liable on the Indebtedness. The undersigned waives presentment, protest and notice of dishonor or default, notice of acceptance of the guaranty, notice of extensions of credit or other actions taken in reliance hereon, and all demands and notices of any kind in connection with this guaranty or the Indebtedness. AEG, without notice of any kind, may sell, assign, or transfer any of the Indebtedness to a third party, and in such event, each successive assignee, transferee or holder of any of the Indebtedness shall have the right to enforce this guaranty for the benefit of such assignee, transferee, or holder. This guaranty shall be binding on the heirs, legal representatives, successors and assigns, of the undersigned and shall insure to the benefit of AEG, its successors, and assigns.

DATED this _____ day of _____, _____.

STATE OF _____

COUNTY OF _____

_____
GUARANTOR, Individually
(Individual's signature only)

_____
GUARNTOR, PRINTED NAME

This instrument was acknowledged before me this _____ day of _____, _____.

By: _____.

(Printed name of guarantor(s))

My Commission Expires:

_____

_____
Notary Public in and for the

State of _____

_____

7

# AEG PETROLEUM LLC

### Gasoline · Diesel · Lubricants

101 SE 11TH AVE, SUITE 300, AMARILLO TX 79101
P O BOX 1003, AMARILLO TX 79105
PHONE: (806) 322-7000 FAX: (806) 322-1380

## AUTHORIZATION AGREEMENT FOR PRE-ARRANGED PAYMENTS Electronic

### Funds Transfer (EFT/ACH) Authorization

Business/Buyer Name: _____ (Buyer)

Fax No.: _____  Phone No.: _____  TIN/SSN: _____

**BUYER authorizes AEG Petroleum, LLC (AEG) to initiate debit entries from the following account:**

Bank Name: _____  Branch: _____

Bank Address: _____

City: _____  State: _____  Zip: _____

Bank Transit/ABA No.: _____

Account No.: _____

**for the purpose of payment of product invoices in accordance with the payment terms of the invoice.**

**This authority may be terminated only upon 30 days written notice to AEG.**

_____

Signature

Printed Name: _____

Date: _____

**A copy of this document will be sent to Buyer's BANK.**

8

# AEG PETROLEUM LLC

### Gasoline · Diesel · Lubricants

101 SE 11TH AVE, SUITE 300, AMARILLO TX 79101
P O BOX 1003, AMARILLO TX 79105
PHONE: (806) 322-7000 FAX: (806) 322-1380

## PRODUCT TITLE

Business/Buyer Name:_____ (Buyer)

Buyer acknowledges that title to all product delivered by AEG Petroleum, LLC (AEG) to Buyer (i) passes to Buyer immediately upon delivery and (ii) AEG is not responsible for any product that is lost or stolen after delivery to Buyer.

| For partnerships, all partners must sign below. | For corporations and limited liability companies, an authorized officer or member must sign below. |
|---|---|

_____ | _____

Partnership Name (Buyer) | Entity Name (Buyer)

By:_____, Partner | By:_____
Printed Name:_____ | Printed Name:_____
 | Title:_____

By:_____, Partner | Date:_____
Printed Name:_____ |

 | Account Name (individual)

By:_____, Partner | Printed Name:_____
Printed Name:_____ |

 | Date:  _____



06-352
(Rev 8-09/8)

# TEXAS END USER SIGNED STATEMENT FOR PURCHASING TAX-FREE DYED DIESEL FUEL

Selling supplier or distributor: **AEG Petroleum, LLC**

Address: **101 SE 11th Ave, Suite 300**

**Amarillo TX  79101**

| Purchasing entity name | End user signed statement number |
|---|---|
| Address | Beginning effective date |
| | Taxpayer number |

*If the purchaser is a division of a corporation, give the name and address of the parent corporation, not the division DBA name.*

Parent corporation name: _____

Address: _____

_____

## PLEASE READ CAREFULLY BEFORE SIGNING

1. Will you use any of this diesel fuel in a motor vehicle on public highways, streets or roads? .......... ☐ YES  ☐ NO

2. Will you resell any of this diesel fuel? _____ ☐ YES  ☐ NO

3. Will you purchase more than 10,000 gallons per month? _____ ☐ YES  ☐ NO

### If any answer is "YES," you may not legally sign this statement.

*EXCEPTION: A purchaser using an End User Signed Statement Number to purchase dyed diesel fuel for exclusive use in oil or gas production must also furnish a Letter of Exception issued by the Comptroller to authorize the purchase of up to 25,000 gallons per month.*

### NOTE: THIS IS YOUR MASTER COPY. PLEASE RETAIN IN YOUR FILES AND MAKE COPIES AS NEEDED.

I DECLARE THAT:

* none of the dyed diesel fuel purchased on this signed statement will be used on public highways, streets or roads;

* all of the dyed diesel fuel purchased on this signed statement will be consumed by the purchaser in Texas and will not be resold; and

* none of the dyed diesel fuel purchased on this signed statement will be delivered or permitted to be delivered into the fuel supply tanks of motor vehicles operating on public highways, streets or roads in this state.

I am aware that certain fines and criminal penalties are provided by law for giving a false diesel fuel signed statement.

Name of purchaser *(Type or print)*

By: _____

Purchaser or authorized representative *(Type or print)*

Signature of authorized representative

**sign here ►**

Date

For information, call (800) 252-1383 or (512) 463-4600.

# AEG PETROLEUM LLC

**Gasoline · Diesel · Lubricants**
**101 SE. 11ᵗʰ Street – P.O. Box 1003 – Amarillo, Texas 79105**
**Phone : (806) 322-7000 Fax : (806) 322-1380**
**Email : info@aegpetroleum.com**

## Customer Fuel Authorization Form

Customer: _____

## Authorized Drivers

| Driver Name | Driver ID Last 4 of SSN | Unit # | | Driver Name | Driver ID Last 4 of SSN | Unit # |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

## Product Selection

| | Unleaded | Clear Diesel | Dyed Diesel | Convl. Unlead | Delo 15/40 | Chevron HPLX LA 30 | Drip Oil | THF |
|---|---|---|---|---|---|---|---|---|
| Driver 1 | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Driver 2 | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Driver 3 | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Driver 4 | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Driver 5 | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Driver 6 | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Driver 7 | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Driver 8 | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Driver 9 | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Driver 10 | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Driver 11 | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Driver 12 | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Driver 13 | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Driver 14 | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Driver 15 | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Driver 16 | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**Office Use Only**

Date Rec'd
Entered By:
Approved By:          Date:

_____          _____
Customer Signature          Date


01-339
(Rev 4-13/8)

# Texas Sales and Use Tax Resale Certificate

| Name of purchaser, firm or agency as shown on permit | Phone (Area code and number) |
|---|---|

| Address (Street & number, P.O. Box or Route number) |
|---|

| City, State, ZIP code |
|---|

Texas Sales and Use Tax Permit Number *(must contain 11 digits)*

Out-of-state retailer's registration number or Federal Taxpayers Registry (RFC) number for retailers based in Mexico

*(Retailers based in Mexico must also provide a copy of their Mexico registration form to the seller.)*

---

I, the purchaser named above, claim the right to make a non-taxable purchase (for resale of the taxable items described below or on the attached order or invoice) from:

Seller: _____

Street address: _____

City, State, ZIP code: _____

Description of items to be purchased on the attached order or invoice:

_____
_____
_____
_____

Description of the type of business activity generally engaged in or type of items normally sold by the purchaser:

_____
_____

The taxable items described above, or on the attached order or invoice, will be resold, rented or leased by me within the geographical limits of the United States of America, its territories and possessions or within the geographical limits of the United Mexican States, in their present form or attached to other taxable items to be sold.

I understand that if I make any use of the items other than retention, demonstration or display while holding them for sale, lease or rental, I must pay sales tax on the items at the time of use based upon either the purchase price or the fair market rental value for the period of time used.

*I understand that it is a criminal offense to give a resale certificate to the seller for taxable items that I know, at the time of purchase, are purchased for use rather than for the purpose of resale, lease or rental, and depending on the amount of tax evaded, the offense may range from a Class C misdemeanor to a felony of the second degree.*

| sign here ▷ Purchaser | Title | Date |
|---|---|---|

---

**This certificate should be furnished to the supplier.**
**Do not send the completed certificate to the Comptroller of Public Accounts.**

 01-339 (Back)
(Rev 4-13/8)

# Texas Sales and Use Tax Exemption Certification

*This certificate does not require a number to be valid.*

| Name of purchaser, firm or agency | |
|---|---|
| Address (Street & number, P.O. Box or Route number) | Phone (Area code and number) |
| City, State, ZIP code | |

I, the purchaser named above, claim an exemption from payment of sales and use taxes (for the purchase of taxable items described below or on the attached order or invoice) from:

Seller: _____

Street address: _____ City, State, ZIP code: _____

Description of items to be purchased or on the attached order or invoice:

_____

_____

_____

_____

_____

Purchaser claims this exemption for the following reason:

_____

_____

_____

_____

_____

I understand that I will be liable for payment of all state and local sales or use taxes which may become due for failure to comply with the provisions of the Tax Code and/or all applicable law.

*I understand that it is a criminal offense to give an exemption certificate to the seller for taxable items that I know, at the time of purchase, will be used in a manner other than that expressed in this certificate, and depending on the amount of tax evaded, the offense may range from a Class C misdemeanor to a felony of the second degree.*

| sign here ▶ | Purchaser | Title | Date |
|---|---|---|---|
| | | | |

NOTE:   This certificate cannot be issued for the purchase, lease, or rental of a motor vehicle.
***THIS CERTIFICATE DOES NOT REQUIRE A NUMBER TO BE VALID.***
Sales and Use Tax "Exemption Numbers" or "Tax Exempt" Numbers do not exist.

**This certificate should be furnished to the supplier.**
**Do not send the completed certificate to the Comptroller of Public Accounts.**

# EXHIBIT C

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

Chevron Intellectual Property LLC, and
Chevron U.S.A. Inc.,

        Plaintiffs,

        v.

        Case No. 4:18-cv-3133

AEG Petroleum LLC,

        Defendant.

## [PROPOSED] STIPULATED PROTECTIVE ORDER

**WHEREAS**, Plaintiffs Chevron Intellectual Property LLC and Chevron U.S.A. Inc. (collectively, "Chevron") and Defendant AEG Petroleum LLC ("AEG"), parties to the above-captioned action (the "Action"), may seek discovery of documents, information, or other materials that may contain trade secrets or other confidential research, development, or commercial information of the parties, other parties, or third parties;

**NOW THEREFORE**, pursuant to Federal Rule of Civil Procedure 26(c), upon the stipulation and consent of the parties and for good cause shown, the Court hereby ORDERS that:

### Proceedings and Information Governed

1.    This Order ("Protective Order") governs any document, information, or other thing furnished by any party to any other party, and it includes any non-party who receives a subpoena in connection with this action. The information protected

1

includes, but is not limited to: answers to interrogatories; answers to requests for admission; responses to requests for production of documents; deposition transcripts and videotapes; deposition exhibits; and other writings or things produced, given, or filed in this action that are designated by a party as "Confidential Information" in accordance with the terms of this Protective Order, as well as to any copies, excerpts, abstracts, analyses, summaries, descriptions, or other forms of recorded information containing, reflecting, or disclosing such information.

2.    All counsel and parties agree to be bound by the terms set forth herein with regard to Confidential Information that may have already been produced prior to the date the Court enters this Protective Order, and any such Confidential Information produced in the future.

## Designation and Maintenance of Confidential Information

3.    For purposes of this Protective Order, the "Confidential Information" designation means that the document is comprised of personal identifying information, or trade secrets, confidential research and development, financial, technical, marketing, or any other sensitive trade secret or commercial information that is not publicly known and is of technical or commercial advantage to its possessor, in accordance with Fed. R. Civ. P. 26(c)(7), or other information required by law or agreement to be kept confidential. Confidential Information does not include, and this Protective Order does not apply to information that has been disclosed to the public in a manner making such information no longer confidential.

4.      Documents and things produced during the course of this litigation within the scope of paragraph 3 above, may be designated by the producing party as containing Confidential Information by placing on each page and each thing the words "**CONFIDENTIAL**" or "**SUBJECT TO PROTECTIVE ORDER**". All copies, duplicates, extracts, summaries, or descriptions of documents designated as Confidential Information pursuant to this Protective Order, or any portion thereof, shall be immediately affixed with the same confidential legend. All such copies shall be afforded the full protection of this Protective Order.

5.      A party may designate information disclosed at a deposition as Confidential Information by requesting the reporter to so designate the transcript or any portion of the transcript at the time of the deposition. If no such designation is made at the time of the deposition, any party shall have thirty (30) calendar days after receipt of the final transcript by counsel to specifically set out in writing the page and line designations for those specific portions of the deposition transcript designated as confidential. During this thirty (30) calendar day period, the deposition transcript must be treated as Confidential Information, unless the disclosing party consents in writing to less confidential treatment of the information. Each party and the court reporter must attach a copy of any final and timely written designation notice to the transcript, and each copy of the transcript in its possession, custody, or control, and the portions designated in such notice must thereafter be treated in accordance with this Protective Order. In all events, counsel will maintain the confidentiality of deposition transcripts or exhibits that

reveal the substance or content of documents, written responses, pleadings, or other information designated as Confidential Information pursuant to the provisions of this Protective Order, unless and until the Court rules that such materials not be treated as confidential under this Protective Order.

### Inadvertent Failure to Designate

6. The inadvertent failure to designate or withhold any information as confidential or privileged will not be deemed to waive a later claim as to its confidential or privileged nature, or to stop the producing party from designating such information as confidential at a later date in writing and with particularity. The information must be treated by the receiving party as confidential from the time the receiving party is notified in writing of the change in the designation.

7. Such re-designation shall be accomplished by notifying counsel for each party in writing of the confidential designation, and providing replacement images bearing the appropriate designation. Upon receipt of any re-designation and replacement image, all parties shall (1) treat the material as Confidential Information in accordance with this Protective Order; (2) take reasonable steps to notify any persons known to have possession of any material subsequently designated Confidential Information of the designation; and (3) promptly endeavor to procure all copies of such material from any persons known to have possession of such material who are not entitled to receipt under this Protective Order.

8. Inadvertent production of information or documents subject to work-product immunity, the attorney-client privilege, or other legal privilege protecting

4

the information from discovery shall not constitute a waiver of the immunity or privilege, provided that the party producing the materials shall notify all parties in writing within ten (10) days from the discovery of the inadvertent production.  If such notification is made, such inadvertently produced materials and all copies thereof shall, upon request, be promptly returned to the party making the inadvertent production, all notes or other work product of the receiving party reflecting the contents of such materials shall be destroyed, and such returned or destroyed material shall be deleted from any litigation support or other database. No use of any such inadvertently produced privileged or immune materials shall be made at any hearing, deposition, or trial, nor shall the contents be disclosed to anyone.  A receiving party is free to dispute the claim of privilege or inadvertence by bringing an appropriate motion before the Court, provided that no use of the materials be made of the materials, in accordance with this paragraph, until such time as the Court resolves the dispute. Each party retains all rights and arguments as to any proceeding regarding the inadvertently produced privilege or immune materials.

## Challenge to Designations

9.      A receiving party may challenge a producing party's designation at any time, so long as the challenge is brought within a sufficient time prior to trial to permit the parties to meet and confer meaningfully regarding the challenge.  Any receiving party disagreeing with a designation may request in writing that the producing party change the designation.  The challenging party must identify with

particularity the bates numbers of the documents being challenged and the grounds upon which the challenge is based. The producing party will then have ten (10) business days, or so long as the parties mutually agree to in writing, after receipt of the written challenge notice to advise the receiving party whether or not it will change the designation. If the parties are unable to reach an agreement after the expiration of this ten (10) business day time-frame, and after the conference described above, the receiving party may seek an order to alter the confidential status of the designated information. Until any dispute under this paragraph is ruled upon by the presiding judge, the confidential designation will remain in full force and effect, and all parties must continue to accord the information the confidential treatment required by this Protective Order.

<u>**Disclosure and Use of Confidential Information**</u>

10.     No party or any other person who examines any Confidential Information protected by this Protective order shall disseminate orally, in writing, or by any other means, protected information other than as permitted by this Protective Order.

11.     Information designated as Confidential Information may only be used for purposes of preparation, trial, and appeal of this lawsuit. Confidential Information may not be used for any other purpose.

12.     Notwithstanding any other provision, nothing in this Protective Order shall prevent any party from complying with a subpoena from a governmental

agency, or an order of a state or federal court, that calls for Confidential Information.

13.     Notwithstanding any other provision, nothing in this Protective Order shall limit any producing party from disclosing or using its own Confidential Information in any manner it sees fit.   Such disclosure shall not affect any confidential designation made pursuant to the terms of this Protective Order, so long as the disclosure is made in a manner that is reasonably calculated to maintain the confidentiality of the information.

14.   Confidential Information may be disclosed by the receiving party only to the following individuals:

(a)     employees, officers, or directors of the parties who have direct functional responsibility for assisting in the preparation and trial of this lawsuit, or any appeal, provided that prior to any disclosure the individuals shall be advised of, and shall become subject to the terms of this Protective Order;

(b)     outside counsel for the parties, and employees of outside counsel for the parties who have direct functional responsibility for assisting in the preparation and trial of this lawsuit, or any appeal, and who are advised of and become subject to this Protective Order in advance of disclosure;

(c)     experts or consultants employed by the parties or their counsel to assist in the preparation and trial of this lawsuit, provided that before

7

disclosing any Confidential Information to any person, the party proposing to make such disclosure will assure itself that the person to whom Confidential Information will be disclosed is not a competitor of the producing party (or an employee, officer, director or consultant, or anyone, who, at the time of disclosure, is anticipated to become an employee, officer, director or consultant of a competitor), irrespective of whether they are an expert in this action, provided that prior to any disclosure, such individuals are advised of the terms of this Protective Order and shall become subject to its terms;

(d)     any person who (i) authored or received a copy of any Confidential Information before it was produced in this lawsuit; (ii) was present or participated in a meeting or discussion of any Confidential Information before it was produced in this lawsuit; (iii) otherwise knew of the Confidential Information before it was produced in this lawsuit; or (iv) whose name appears in or on any Confidential Information, provided that prior to any disclosure, such individuals are advised of the terms of this Protective Order and shall become subject to its terms;

(e)     to witnesses or deponents in the course of this lawsuit only as necessary for the lawsuit, provided that there is a reasonable basis to believe the witness will give relevant testimony regarding the Confidential Information, provided that prior to any disclosure, such individuals are advised of the terms of this Protective Order and shall

8

become subject to its terms. If a party wishes to disclose Confidential Information to a deponent or witness under this provision, a minimum five (5) business days' advance notice and an opportunity to object must be afforded to the other party prior to disclosure;

(f)   the Court and court personnel (including the court having jurisdiction over any appeal);

(g)   any persons requested by outside counsel to furnish services such as document coding, image scanning, mock trial, jury profiling, translation services, court reporting services, demonstrative exhibit preparation, or the creation of any computer database from documents, provided that prior to any disclosure, such individuals are advised of the terms of this Protective Order and shall become subject to its terms; and

(h)   mediators, as well as secretaries, paraprofessional assistants and other employees of such mediators, who are actively engaged in assisting the mediators in connection with this matter, provided that prior to any disclosure, the individuals shall be advised of, and shall become subject to the terms of this Protective Order.

15.   Prior to disclosing Confidential Information to any third-party, counsel is responsible for: (a) advising the third-party about the terms of this Protective Order, and (b) obtaining the agreement of the third-party to be bound by the Protective Order's terms by executing the Confidentiality Agreement attached as

9

Exhibit "A." Counsel shall maintain a list of all persons to whom it has provided Confidential Information authorized under paragraph 13, as well as all copies of Confidentiality Agreements executed pursuant to the terms of this Protective Order, both of which shall be discoverable by the producing party upon a written notice with good cause shown. Within sixty (60) calendar days after the conclusion of this lawsuit, whether by final judgment or settlement, including the exhaustion of all appeal(s), counsel for the receiving party shall confirm in writing that it has destroyed or returned all Confidential Information to counsel for the producing party, and taken appropriate steps to have all copies of Confidential Information provided to third-parties as authorized under this Protective Order returned or destroyed.

### Third-Party Information

16.     The existence of this Protective Order must be disclosed to any person producing documents, tangible things, or testimony in this action who may reasonably be expected to desire confidential treatment for such documents, tangible things or testimony. Any such third-person may designate documents, tangible things, or testimony confidential pursuant to this Protective Order.

### Filing Documents with the Court

17.     A party may not file in the public record any Confidential Information without written permission from the producing party or a Court order secured after appropriate notice to all parties.

18.     If any party wishes to submit Confidential Information to the Court, the submission must be filed electronically in accordance with Section 6.E of the Administrative Procedures for Electronic Filing in Civil and Criminal Cases.

## No Prejudice

19.     Producing or receiving Confidential Information, or otherwise complying with the terms of this Protective Order, will not (a) operate as an admission by any party that any particular Confidential Information contains or reflects trade secrets or any other type of confidential or proprietary information; (b) prejudice the rights of a party to object to the production of information or material that the party does not consider to be within the scope of discovery; (c) prejudice the rights of a party to seek a determination by the presiding judge that particular materials be produced; (d) prejudice the rights of a party to apply to the presiding judge for further protective orders; or (e) prevent the parties from agreeing in writing to alter or waive the provisions or protections provided for in this Protective Order with respect to any particular information or material.

20.     The parties shall meet and confer regarding the procedures for use of Confidential Information at trial and shall jointly move the Court for entry of an appropriate order.

## Other Proceedings

21.     By entering this Protective Order and limiting the disclosure of information in this case, the presiding judge does not intend to preclude another court from finding that information may be relevant and subject to disclosure in

another case.  Any person or party subject to this Protective Order who may be subject to a motion, subpoena, or other process ordering the disclosure of another party's Confidential Information must:

> (a)    promptly notify the court or administrative agency or other person or entity that issued the order, subpoena or other process that the requested materials are subject to this Protective Order; and
>
> (b)    promptly notify counsel for the producing party of the motion, subpoena or other process, including (i) identification of the Confidential Information requested; (ii) the date on which compliance is requested or required; (iii) the location compliance is requested or required; (iv) the identity of the party, entity, or agency seeking the materials; and (v) the case name, jurisdiction, docket, complaint, charge, civil action or other identification number or other designation identifying the litigation, administrative or other proceeding in which the order, subpoena or other process was issued.

22.    In no event shall Confidential Information be produced in another proceeding prior to the expiration of twenty (20) calendar days following transmission of the written notice to the producing party discussed in paragraph 20, unless required to do so by the subpoena or order seeking such Confidential Information.  Nothing in this Protective order shall prohibit the producing party from seeking to intervene in any litigation, administrative action, or other proceeding in which the order, subpoena, or other process was issued.

## <u>Remedies</u>

23.     It is Ordered that this Protective Order may be enforced by the sanctions set forth in Fed. R. Civ. P. 37(b) and any other sanctions as may be available to the presiding judge, including the power to hold parties or other violators of this Protective Order in contempt.  All other remedies available to any person injured by a violation of this Protective Order are fully reserved.

24.     If any party learns of any unauthorized disclosure of Confidential Information by any individual, the party shall immediately consult with the other parties to resolve any issue of unauthorized disclosure consistent with this Order. If judicial relief is still needed, the parties shall inform the Court in writing of all pertinent facts relating to such disclosure.

25.     Any party may petition the presiding judge for good cause shown if the party desires relief from a term or condition of this Protective Order.

26.     After termination of this lawsuit by entry of a final judgment or order of dismissal, the provisions of this Protective Order shall continue to be binding. This Protective Order is, and shall be deemed to be, an enforceable agreement between the parties, their agents, and their attorneys.  The parties, their attorneys, and employees of such attorneys, and their respective expert witnesses, consultants and representatives retained in connection with this action each expressly agrees to submit to the personal jurisdiction of this Court for purposes of any proceeding brought by a party to enforce this Protective Order.

Respectfully submitted, and agreed as to form, substance, and entry,

February 14, 2019

By: */s/ Christie Cardon*
R. Bruce Hurley
Attorney in Charge
Texas Bar No. 10311400
S.D. Tex. Fed. ID No. 12335
Christie Cardon
Texas Bar No. 24036326
S.D. Tex. Fed. ID No. 567834
Abby L. Parsons
Texas Bar No. 24094303
S.D. Tex. Fed. ID No. 2618689
KING & SPALDING LLP
1100 Louisiana St., Ste. 4000
Houston, Texas 77002
(Tel): 713-751-3200
(Fax): 713-751-3900
bhurley@kslaw.com
ccardon@kslaw.com
aparsons@kslaw.com

*Of Counsel:*

Kathleen E. McCarthy
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Tel: (212) 556-2345
Fax: (212) 556-2222
kmccarthy@kslaw.com

Janna K. Fischer
KING & SPALDING LLP
1515 Wynkoop St., Ste. 800
Denver, Colorado 80202
Tel: (720) 535-2313
jfischer@kslaw.com

*Attorneys for Plaintiffs*
*Chevron Intellectual Property LLC*
*Chevron U.S.A. Inc.*

14

By: /s/ Bradley C. Weber
_____

Bradley C. Weber
Attorney in Charge
Texas Bar No. 21042470
S.D. Tex. Fed. ID No. 92565
**LOCKE LORD LLP**
2200 Ross Avenue, Suite 2800
Dallas TX 75201-6776
(Tel): 214-740-8497
(Fax): 214-756-8497
bweber@lockelord.com

*Of Counsel:*

John Mozola
Texas Bar No. 14615500
Mark S. Logsdon
Texas Bar No. 00795486
**MULLIN HOARD & BROWN, L.L.P.**
500 South Taylor, Suite 800
P. O. Box 31656
Amarillo, Texas 79120-1656
(Tel): 806-372-5050
(Fax): 806-372-5086
jmozola@mhba.com
mlogsdon@mhba.com

*Attorneys for Defendant AEG Petroleum, LLC*

**SO ORDERED.**

DATED: _____        _____
                                    JUDGE ALFRED H. BENNETT
                                    U.S. DISTRICT COURT JUDGE

15

**Exhibit A**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| Chevron Intellectual Property LLC, and Chevron U.S.A. Inc., | |
| Plaintiffs, | |
| v. | Case No. 4:18-cv-3133 |
| AEG Petroleum LLC, | |
| Defendant. | |

### CONFIDENTIALITY AGREEMENT

I, _____, hereby affirm that:

Information, including documents and things, designated as "Confidential Information" as defined in the Protective Order entered in the above-captioned action ("Protective Order"), is being provided to me pursuant to the terms and restrictions of the Protective Order.

I have been given a copy of and have read the Protective Order.

I am familiar with the terms of the Protective Order and I agree to comply with and to be bound by its terms.

I submit to the jurisdiction of the above entitled Court for enforcement of the Protective Order.

I agree not to use any Confidential Information disclosed to me pursuant to the Protective Order except for purposes of the above-captioned litigation, and not to disclose any of this information to persons other than those specifically authorized by the Protective Order without the express written consent of the party who designated the information as confidential or by order of the presiding judge. I also agree to notify any stenographic, clerical or technical personnel who are required to assist me of the terms of this Protective Order and of its binding effect on them and me.

I understand that I am to retain all documents or materials designated as or containing Confidential Information in a secure manner, and that all such documents and materials are to remain in my personal custody until the completion of my assigned duties in this matter, whereupon all such documents and materials, including all copies thereof, and any writings prepared by me containing any Confidential Information are to be returned to counsel who provided me with such documents and materials.

DATED: _____    By: _____
                            [Signature]

# EXHIBIT D



**Locke Lord** LLP

Attorneys & Counselors

2200 Ross Avenue, Suite 2800
Dallas, TX 75201
Telephone: 214-740-8000
Fax: 214-740-8800
www.lockelord.com

Bradley C. Weber
Direct Telephone: 214-740-8497
Direct Fax: 214-756-8497
bweber@lockelord.com

September 24, 2018

*VIA CERTIFIED MAIL, RRR #9214 7969 0099 9790 1623 7385 16*

Mr. Todd Pitts
Western Marketing, Inc.
1201 Northeast 3rd Avenue
Amarillo, Texas   79107

> Re: *Chevron Intellectual Property LLC and Chevron U.S.A. Inc. v. AEG Petroleum LLC and Hansford Supply, Inc.*; Case No. 4:18-cv-03133; in the U.S. District Court for the Southern District of Texas (Houston)

Dear Mr. Pitts:

My client, AEG Petroleum, LLC ("AEG"), was named as a defendant in the above-referenced lawsuit that was filed by Plaintiffs Chevron Intellectual Property LLC and Chevron U.S.A. Inc. (collectively, "Chevron") on September 5, 2018. A copy of the Original Complaint (the "Complaint") from that action is attached. According to allegations in the Complaint, you and other persons employed or affiliated with Western Marketing, Inc. ("WMI") and/or RelaDyne, Inc. are material witnesses in this action.

AEG requests WMI to preserve all documents, tangible things, and electronically-stored information potentially relevant to the issues in the above-referenced case. As used in this letter, "WMI" refers to Western Marketing, Inc. and its predecessors, successors, parents (including RelaDyne, Inc.), subsidiaries, divisions, or affiliates, as well as their respective officers, directors, agents, attorneys, accountants, employees, partners, or other persons occupying similar positions or performing similar functions.

Because you and WMI have been identified by Chevron as material witnesses in this action, you should anticipate that AEG will serve you and WMI with subpoenas to produce relevant documents, data, and other tangible things related to the allegations in the Complaint. Much of the information subject to disclosure or responsive to discovery subpoenas is likely

Atlanta | Austin | Boston | Cincinnati | Chicago | Dallas | Hartford | Hong Kong | Houston | London | Los Angeles | Miami | Morristown | New Orleans | New York | Providence | San Francisco | Stamford | Washington DC | West Palm Beach

America:0107034/00001:70023492v1

Mr. Todd Pitts
September 24, 2018
Page 2

stored on WMI's current and former computer systems, networks, and other media and devices (including smart phones, cell phones, voice-messaging systems, cloud-based repositories, external hard drives, compact disks, DVDs, and flash drives).

Electronically-stored information ("ESI") should be afforded the broadest possible definition and includes (by way of example, and not as an exclusive list) potentially relevant information electronically, magnetically, or optically stored as:

- Digital communications (e.g., e-mail, voice mail, instant messaging, text messaging, social media platforms);

- Word processed documents (e.g., Word documents and drafts);

- Spreadsheets and tables (e.g., Excel worksheets);

- Accounting Application Data (e.g., QuickBooks data files);

- Image and Facsimile Files (e.g., .PDF, .TIFF, .JPG, .GIF images);

- Sound Recordings (e.g., .WAV and .MP3 files);

- Video and Animation (e.g., .AVI and .MOV files);

- Databases (e.g., Access, Oracle, SQL Server data, SAP);

- Contact and Relationship Management Data (e.g., Outlook);

- Calendar and Diary Application Data (e.g., Outlook PST, Yahoo, blog tools);

- Online Access Data (e.g., Temporary Internet Files, History, Cookies);

- Presentations (e.g., PowerPoint Presentations);

- Network Access and Server Activity Logs;

- Project Management Application Data;

- Computer Aided Design/Drawing Files; and

- Back Up and Archival Files (e.g., Zip, .rar, .GHO).

ESI resides not only in areas of electronic, magnetic, and optical storage media reasonably accessible to WMI, but also in areas WMI may deem not reasonably accessible.

Mr. Todd Pitts
September 24, 2018
Page 3

WMI is obliged to preserve potentially relevant evidence from both of these sources of ESI, even if WMI does not anticipate *producing* such ESI.

AEG's demand that WMI should preserve both accessible and inaccessible ESI is reasonable and necessary.  Pursuant to Federal Rule of Civil Procedure 26(b)(2)(B), WMI must identify all sources of ESI it declines to produce and demonstrate to the Court why such sources are not reasonably accessible.  For good cause shown, the Court may then order production of the ESI, even if it finds that it is not reasonably accessible.  Accordingly, even ESI that WMI deems reasonably inaccessible must be preserved in the interim so as not to deprive AEG of its right to secure the evidence or the Court of its right to adjudicate the issue.

**Preservation Requires Immediate Intervention**

WMI should act immediately to preserve potentially relevant ESI including, without limitation, information with the *earlier* of a Created or Last Modified date on or after July 1, 2010 through the date of this demand and concerning:

- The events, omissions, and causes of action alleged in the Complaint;

- All communications between WMI and Chevron regarding this lawsuit, including any requests for you or other employees of WMI to produce declarations or other evidence in support of Chevron's claims and allegations in the lawsuit;

- All communications between WMI, Chevron, and/or any other authorized "Lubrication Marketers" ("LMs") and/or "Associate Lubrication Marketers" ("ALMs") that relate to AEG and/or Hansford Supply, Inc. ("Hansford Supply") (*see* Complaint ¶ 20);

- Chevron's decision to approve, not approve, or terminate any company or person (including WMI) as a LM or ALM in the Texas Panhandle, West Texas, Eastern New Mexico, Southwestern Kansas, or Western Oklahoma areas (collectively, the "Relevant Area") (*see* Complaint ¶ 20);

- Chevron's strict product integrity standards related to the handling, distribution, and marketing of Chevron lubricants  (*see* Complaint ¶ 21);

- All audits of WMI and/or other Chevron LMs or ALMs in the Relevant Area to assure that WMI and/or other LMs and ALMs were properly using the correct labels and hoses for the correct products, and were otherwise maintaining Chevron's product integrity standards (*see* Complaint ¶ 22);

Mr. Todd Pitts
September 24, 2018
Page 4

- All Chevron Lubrication Marketer Agreements that applied to WMI and/or any other LMs or ALMs in the Relevant Area (*see* Complaint ¶¶ 20, 22);

- The decision by WMI and/or Chevron to affiliate with AEG as an ALM of Chevron Bulk Products in February 2011 (*see* Complaint ¶ 24);

- The sampling, handling, and testing of AEG's product that occurred in late 2016 (*see* Complaint ¶ 25);

- The decision by WMI to end its relationship with AEG in March 2017 (*see* Complaint ¶ 27);

- Communications between Chevron, WMI, and/or any other LMs or ALMs regarding prices charged by AEG for Chevron Bulk Products and customers that WMI lost to AEG (*see* Complaint ¶ 28);

- Communications between Chevron, WMI, and/or other LMs or ALMs regarding prices charged by Chevron, WMI, and/or other LMs and ALMs for Chevron Bulk Products in the Relevant Area (*see* Complaint ¶ 28);

- The sampling, handling, and testing of lubricants obtained from AEG's customers, including Hansford Supply (*see* Complaint ¶ 29);

- Communications between Chevron, WMI, and/or LubeWatch regarding the testing of products obtained from AEG or AEG's customers (*see* Complaint ¶ 29 and Exs. 19, 20, 21); and

- Any other ESI you may possess that is related to Chevron's claims in this action.

Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence. WMI must also intervene to prevent loss due to routine operations and employ proper techniques and protocols suited to protection of ESI. *Be advised that sources of ESI are altered and erased by continued use of computers and other devices.* Booting a drive, examining its contents, or running any application will irretrievably alter the evidence it contains and may constitute unlawful spoliation of evidence. Consequently, alteration and erasure may result from WMI's failure to act diligently and responsibly to prevent loss or corruption of ESI.

**Suspension of Routine Destruction**

WMI is requested to immediately initiate a litigation hold for potentially relevant ESI, documents, and tangible things, and to act diligently and in good faith to secure and audit

Mr. Todd Pitts
September 24, 2018
Page 5

compliance with such a litigation hold. WMI is further requested to immediately identify and modify or suspend features of its information systems and devices that, in routine operation, operate to cause the loss of potentially relevant ESI. Examples of such features and operations include:

- Purging the contents of e-mail repositories by age, capacity, custodian, or other criteria;

- Using data or media wiping, disposal, erasure, or encryption utilities or devices;

- Overwriting, erasing, destroying, or discarding back up media;

- Re-assigning, re-imaging, or disposing of systems, servers, devices, personal devices, or other media;

- Running antivirus or other programs effecting wholesale metadata alteration;

- Releasing or purging online storage repositories;

- Using metadata stripper utilities;

- Disabling server or IM logging; and

- Executing drive or file defragmentation or compression programs.

**Guard Against Deletion**

WMI should anticipate that its employees, officers, or others may seek to hide, destroy, or alter ESI and WMI must act to prevent or guard against such actions. Especially where WMI computers and devices have been used for Internet access or personal communications, it should anticipate that users may seek to delete or destroy information they regard as personal, confidential, or embarrassing and, in so doing, may also delete or destroy potentially relevant ESI. This concern is not one unique to WMI or its employees and officers. It is simply a situation that occurs with such regularity in electronic discovery efforts that any custodian of ESI and their counsel are obliged to anticipate and guard against its occurrence.

**Preservation in Native Form**

WMI should anticipate that certain ESI, including but not limited to spreadsheets and databases, will be sought in the form or forms in which they are ordinarily maintained. Accordingly, WMI should preserve ESI in such native forms, and it should not select methods to preserve ESI that remove or degrade the ability to search WMI's ESI by electronic means or make it difficult or burdensome to access or use the information efficiently in the litigation. WMI additionally should refrain from actions that shift ESI from reasonably accessible media

Mr. Todd Pitts
September 24, 2018
Page 6

and forms to less accessible media and forms if the effect of such actions is to make such ESI not reasonably accessible.

**Metadata**

WMI should further anticipate the need to disclose and produce system and application metadata and act to preserve it. System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location, and dates of creation and last modification or access. Application metadata is information automatically included or embedded in electronic files, but which may not be apparent to a user, including deleted content, draft language, commentary, collaboration and distribution data, and dates of creation and printing. Be advised that metadata may be overwritten or corrupted by careless handling or improper steps to preserve ESI. For electronic mail, metadata includes all header routing data and Base 64 encoded attachment data, in addition to the To, From, Subject, Received Date, cc, and bcc fields.

**Servers**

With respect to servers like those used to manage electronic mail (e.g., Microsoft Exchange) or network storage (often called a user's "network share"), the complete contents of each user's network share and e-mail account should be preserved. There are several ways to preserve the contents of a server depending upon, e.g., its RAID configuration and whether it can be downed or must be online 24/7. If WMI questions whether the preservation method it pursues is one that we will accept as sufficient, please call to discuss it.

**Home Systems, Laptops, Online Accounts, and Other ESI Venues**

Though we expect that WMI will act swiftly to preserve data on office workstations and servers, it also should determine if any home or portable systems may contain potentially relevant data. To the extent that WMI's officers, board members, or employees have sent or received potentially relevant e-mails or created or reviewed potentially relevant documents away from the office, WMI must preserve the contents of those systems, devices, and media used for these purposes (including not only potentially relevant data from portable and home computers, but also from portable thumb drives, compact disks, DVDS, and the user's PDA, smart phone, voice mailbox, or other forms of ESI storage). Similarly, if employees, officers, or board members used online or browser-based email accounts or services (such as Gmail, Yahoo Mail, or the like) to send or receive potentially relevant messages and attachments, the contents of these account mailboxes (including Sent, Deleted, and Archived Message folders) should be preserved.

Mr. Todd Pitts
September 24, 2018
Page 7

**Ancillary Preservation**

WMI also must preserve documents and other tangible items that may be required to access, interpret, or search potentially relevant ESI, including logs, control sheets, specifications, indices, naming protocols, file lists, network diagrams, flow charts, instruction sheets, data entry forms, abbreviation keys, user ID and password rosters, or the like. WMI must preserve any passwords, keys, or other authenticators required to access encrypted files or run applications, along with the installation disks, user manuals, and license keys for applications required to access the ESI. WMI also must preserve any cabling, drivers, and hardware, other than a standard 3.5" floppy disk drive or standard CD or DVD optical disk drive, if needed to access or interpret media on which ESI is stored. This includes tape drives, bar code readers, Zip drives, and other legacy or proprietary devices.

**Paper Preservation of ESI is Inadequate**

As hard copies do not preserve electronic searchability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions. If information exists in both electronic and paper forms, WMI should preserve both forms.

**Agents, Attorneys, and Third Parties**

WMI's preservation obligation extends beyond ESI in its care, possession, or custody and includes ESI in the custody of others that are subject to WMI's direction or control. Accordingly, WMI must notify any current or former agent, attorney, employee, custodian, or contractor in possession of potentially relevant ESI to preserve such ESI to the full extent of WMI's obligation to do so, and it must take reasonable steps to secure their compliance.

**System Sequestration or Forensically Sound Imaging**

With respect to WMI's officers, directors, agents, and employees who have knowledge of the events, omissions, and causes of action alleged in Chevron's Original Complaint, we suggest removing their ESI systems, media, and devices from service and properly sequestering and protecting them may be an appropriate and cost-effective preservation step.

In the event WMI deems it impractical to sequester systems, media, and devices, we believe that the breadth of preservation required, coupled with the modest number of systems implicated, dictates that forensically sound imaging of the systems, media, and devices is expedient and cost effective. As we anticipate the need for forensic examination of one or more of the systems and the presence of relevant evidence in forensically accessible areas of the drives, we request that WMI employ forensically sound ESI preservation methods. Failure to use such methods poses a significant threat of spoliation and data loss.

Mr. Todd Pitts
September 24, 2018
Page 8

By "forensically sound," we mean duplication, for purposes of preservation, of all data stored on the evidence media while employing a proper chain of custody and using tools and methods that make no changes to the evidence and support authentication of the duplicate as a true and complete bit-for-bit image of the original. A forensically sound preservation method guards against changes to metadata evidence and preserves all parts of the electronic evidence, including in the so-called "unallocated clusters," holding deleted files.

**Preservation Protocols**

We will work with WMI in an attempt to agree upon an acceptable protocol for forensically sound preservation of ESI and can supply a suitable protocol, if WMI will furnish an inventory of the systems and media to be preserved. Alternatively, if WMI will promptly disclose the preservation protocol it intends to employ, perhaps we can identify any points of disagreement and resolve them. A successful and compliant ESI preservation effort requires expertise. If WMI does not currently have such expertise at its disposal, we urge WMI to engage the services of an expert in electronic evidence and computer forensics. Perhaps our respective experts can work cooperatively to secure a balance between evidence preservation and burden that is fair to both sides and acceptable to the Court.

**Do Not Delay Preservation**

I am available to discuss reasonable preservation steps; however, *WMI should not defer preservation steps pending such discussions if ESI may be lost or corrupted as a consequence of delay.* Should WMI's failure to preserve potentially relevant evidence results in the corruption, loss, or delay in production of evidence to which AEG is entitled, such failure would constitute spoliation of evidence, and we will consider seeking sanctions against WMI.

**Confirmation of Compliance**

Please confirm by Monday, October 1, 2018, that WMI has taken the steps outlined in this letter to preserve ESI, documents, and other tangible things potentially relevant to this action. If WMI has not undertaken the steps outlined above, or has taken other actions, please describe what it has done to preserve potentially relevant evidence. Thank you.

Sincerely,

Bradley C. Weber

BCW:pp
Enc.

Mr. Todd Pitts
September 24, 2018
Page 9

cc: Mr. Jess Brown, Chief Information Officer, RelaDyne, Inc.
   (via Certified Mail, RRR *#9214 7969 0099 9790 1623 7386 22*)
  R. Bruce Hurley (via e-mail *bhurley@kslaw.com*)
  Abby L. Parsons (via e-mail *aparsons@kslaw.co*m)
  Kathleen E. McCarthy (via e-mail *kmccarthy@kslaw.co*m)

# EXHIBIT E



Patrick Gomez <patrick@aegpetroleum.com>

## FW: Preferred Choice High Velocity Bulk Items
2 messages

**Todd Pitts** <toddpitts@westmktg.com>
To: Patrick Gomez <patrick@aegpetroleum.com>

Fri, Apr 17, 2015 at 11:01 AM

**From:** Mark Spaniol
**Sent:** Thursday, April 16, 2015 12:22 AM
**To:** SALESMEN
**Cc:** INSIDE SALES; Managers; Mike Miller; Stan Kelman; Charese Keesee; Ed Moulin
**Subject:** Preferred Choice High Velocity Bulk Items

Team,

This message is to let you know that we have finalized our selection of CALCO (a Division of Chevron Lubricants USA) as our supplier for the fast moving bulk Preferred Choice (PC) branded items. This is a very limited number of SKUs, but represents over 2/3s of our bulk PC branded volume. The list at the bottom of this message will provide you with the specific items we will be sourcing from CALCO.

There are several benefits to this strategic sourcing decision. The first of which is a more competitive acquisition cost for approximately 1 million gallons of private label volume. Second, we will be able to leverage the logistical benefits associated with the ability to order mixed loads with our branded Chevron business. Next we'll have a premium supplier for our PC branded products, which will guarantee us the highest quality products. Finally, it will create further alignment with our flagship supply partner, Chevron.

We will begin ordering the products almost immediately. We have the administrative items finalized with Chevron and have licensed the formulations under our PC brand with the API. Additionally, we've updated the Product Data Sheets, which are attached to the message.

We are reviewing options for the remainder of our PC and VC product portfolio. We'll be looking to leverage any opportunities to decrease costs, increase quality and/or optimize our inbound logistics. In the meantime, we'll continue to use our existing supply partners for those SKUs.

As soon as we begin to receive product, we'll be able to realize the incremental profit from our existing customers. This will also enable us to better compete in the market place for new business, which is our primary strategy for leveraging this sourcing decision. That said, I trust that each of you will act as good stewards of our brands, business reputation and financial goals & obligations.

In closing, let's take full advantage of this great opportunity. I look forward to see the growth that following shortly.

Good hunting,

Mark!

CONFIDENTIAL

AEG001698

AEG Petroleum LLC Mail - FW: Preferred Choice High Velocity Bulk Items

| WMI SKU | Current WMI Product | Material ID Material Name | | Delivered Cost | | OHR / Gallon | | Standard Cost |
|---|---|---|---|---|---|---|---|---|
| 6225034 Preferred Choice Hyd AW 32 | 225070990 CALCO HYD OIL ISO 32 | $ | 2.82 | S | 0.15 | S | 2.97 |
| 6225036 Preferred Choice Hyd AW 46 | 225160990 CALCO HYD OIL ISO 46 | $ | 2.82 | S | 0.15 | S | 2.97 |
| 6225038 Preferred Choice Hyd AW 68 | 225180990 CALCO HYD OIL ISO 68 | $ | 2.82 | S | 0.15 | S | 2.97 |
| 6290100 PC 15W40 CJ4 | 225073990 CALCO HDMO 15W40 CJ4 SN | S | 4.58 | S | 0.15 | S | 4.73 |
| 6290802 Blue MTN, Bolton, Peak Syn Blend 5w20* | 225084990 CALCO PCMO 5W20 GF5 SN | S | 3.49 | S | 0.15 | S | 3.64 |
| 6290000 Blue MTN, Bolton, Peak Syn Blend 10W30* | 225085990 CALCO PCMO 10W30 GF5 SN | S | 3.49 | S | 0.15 | S | 3.64 |
| 6290802 6290800 Blue MTN, Bolton, Peak Syn Blend 5W30* | 225086990 CALCO PCMO 5W30 GF5 SN | S | 3.49 | S | 0.15 | S | 3.64 |
| 6290012 Blue MTN MP ATF | 226505990 CALCO AUTO TRANS FLUID | S | 3.70 | S | 0.15 | S | 3.85 |
| 6225004 Preferred Choice Premium Tractor | 226609990 CALCO THF | S | 3.68 | S | 0.15 | S | 3.83 |
| 6225006 PC PREMIUM 80W90 | 225011990 CALCO GL-5 GEAR LUBE 80W90 BULK | S | 5.64 | S | 0.15 | S | 5.79 |
| 6225008 PC 85W140 | 225013990 CALCO GL5 GEAR LUBE 85W140 BULK | S | 6.16 | S | 0.15 | S | 6.31 |

This email has been scanned by the Symantec Email Security.cloud service.
For more information please visit http://www.symanteccloud.com

6 attachments

📎 **PC_SynBlend_Motor_Oil_PDS_cal.pdf**
1289K

📎 **PC AW PDS THF_cal.pdf**
1218K

📎 **PC_15W40_CJ4_SM_PDS_cal.pdf**
1186K

📎 **PC_DM_ATF_PDS_cal.pdf**
1137K

📎 **PC_GL5_Gear_Oil_PDS_cal.pdf**
1201K

📎 **Premier_Tractor_cal.pdf**
811K

---

**Patrick Gomez** <patrick@aegpetroleum.com>
To: Wade Alexander <wade@aegpetroleum.com>

Fri, Apr 17, 2015 at 2:15 PM

[Quoted text hidden]

6 attachments

📎 **PC_SynBlend_Motor_Oil_PDS_cal.pdf**
1289K

📎 **PC AW PDS THF_cal.pdf**
1218K

📎 **PC_15W40_CJ4_SM_PDS_cal.pdf**
1186K

📎 **PC_DM_ATF_PDS_cal.pdf**
1137K

📎 **PC_GL5_Gear_Oil_PDS_cal.pdf**
1201K

📎 **Premier_Tractor_cal.pdf**
811K

CONFIDENTIAL     AEG001699



Western Marketing Inc.
P.O. Box 147
Abilene, TX 79604
1 (800) 588-4662

# PREMIUM AW HYDRAULIC OIL

Preferred Choice Premium Anti-Wear (AW) Hydraulic fluids are superior anti-wear hydraulic and circulating fluids especially formulated from paraffinic base oils to provide excellent thermal and oxidative stability in virtually all machine lubrication and hydraulic fluid applications. Preferred Choice Premium AW Hydraulic fluids contain an effective zinc-containing anti-wear agent to help minimize wear in vane, gear and piston pumps.

Preferred Choice Premium AW Hydraulic oils are premium products formulated with an effective anti-wear compound compatible with bearing components for hydraulic or circulating systems requiring high quality anti-wear oils, such as those recommended by hydraulic pump and machine tool manufacturers.

## APPLICATION:

- Hydraulic oil systems, particularly those utilizing positive displacement, high/speed/pressure pumps.
- Circulating oil systems.
- General machine lubrication.

## BENEFITS:

- Low Foaming
- Long-term thermal stability
- Superior demulsibility
- Protection against wear, rust and corrosion
- Excellent oxidation resistance over long service periods

- Extended system life
- Long-term hydrolytic stability
- Excellent filterability

## INDUSTRY SPECIFICATIONS:

- Denison HF-0 and HF-2
- U.S. Steel 127 and 136
- Vickers M-2950-S (Mobile) and I-286-S (Industrial)
- Cincinnati Machine P-68 (ISO 32), P-69 (ISO 68) and P-70 (ISO 46)

- DIN 51524 Part II
- GM LS-2

TYPICAL TEST DATA

| ISO Grade | 32 | 46 | 68 |
|---|---|---|---|
| CPS Number | 225070 | 225160 | 225180 |
| MSDS Number | 11318 | 11318 | 11318 |
| Density | 0.86 | 0.87 | 0.88 |
| Viscosity, Kinematic cSt at 40°C cSt at 100°C | 30.4 5.2 | 43.7 6.5 | 64.6 8.4 |
| Viscosity Index | 98 | 98 | 99 |
| Flash Point, °C(°F) | 220(428) | 226(439) | 235(455) |
| Pour Point, °C(°F) | -25(-13) | -23(-9) | -22(-8) |
| Oxidation Stability, Hours to 2.0 mg KOH/g acid number, ASTM D943 | >2000 | >2000 | >2000 |

CONFIDENTIAL

AEG001700



Western Marketing Inc.
P.O. Box 147
Abilene, TX 79604
1 (800) 588-4662

# HDD 15W40 CJ-4/SM

Preferred Choice 15W-40 high performance engine oil is a premium quality, heavy duty, multi grade oil for all season in diesel powered or a mix of gasoline and diesel-powered equipment. Preferred Choice 15W-40 is leading the way in meeting the enhanced oil requirements of API CJ-4, CI-4Plus and CI-4 and leading OEM specifications by formulating with Group II base oils with an Advanced Detergent Additive System.

## Benefits:

- Protect against excessive wear and corrosion
- Control soot deposits and oil thickening
- Preserve power, fuel economy and emission control

- Speed cold starts
- Longer maintenance intervals

## Industry specifications and original manufacturer's approvals:

- API CJ-4/SM
- Detroit Diesel Power Guard 93K218
- Cummins CES 20081
- Volvo VDS-4

- Mack EO-O Premium Plus
- Caterpillar ECF3 & ECF1
- Renault RLD-3

- Mercedes-Benz p228.3 and p228.31
- Volvo VDS-3 and VDS-4
- MTU Type I & II
- ACEA E7-04
- Cummins CES 20081, 20077, 20076
- Detroit Diesel  DD 93K215 & DD 93K214
- John Deere, Dodge, Ford, General Motors, International
- Mack EO-N Premium Plus '03, EO-M PLUS, EO-M
- API SM/SL/SJ for gasoline engines
- API Service Classification CJ-4, CI-4 PLUS, CI-4, CH-4/SM

- Global DHD-1
- JASO DH-2
- Allison C-4
- Man 3275

## TYPICAL TEST DATA

| SAE Grade | 15W-40 |
|---|---|
| Product Number | 225073 |
| MSDS Number | 6932 |
| Density at 15°C, kg/L | 0.88 |
| Viscosity, Kinematic | |
| cSt at 40°C | 118 |
| cSt at 100°C | 15.4 |
| Viscosity Index | 137 |
| Flash Point, °C(°F) | > 205(> 401) |
| Pour Point, °C(°F) | -32(-26) |
| Total Base Number | 1.0 |
| Base Number, ASTM D2896 | 8 |

CONFIDENTIAL

AEG001701



Western Marketing Inc.
P.O. Box 147
Abilene, TX 79604
1 (800) 588-4662

# DEXRON/ MERCON ATF

Preferred Choice D/M ATF Automatic Transmission Fluid is formulated from highly refined base stocks and compounded with modern additive technology to meet viscometric, friction, wear and oxidation stability properties required in passenger car and light truck transmissions.

## APPLICATION:

- Formulated to meet Dex III/Mercon H specification
- Applications requiring Ford ESP-M2C138CJ and Allison C-4 fluids
- Recommended for use in General Motors, Ford, Chrysler, and most foreign automobiles
- Consult owner's manual for ATF to be used
- Caterpillar TO-2
- Some applications as the operating fluid in hydraulic equipment (especially at low ambient temperature), air compressors, and power steering systems.

## TYPICAL TEST DATA

| | |
|---|---|
| Product Number | 226505 |
| MSDS Number | 2277 |
| Density at 15°C, kg/L | 0.85 |
| Viscosity, Kinematic<br>cSt at 40°C<br>cSt at 100°C | 34.1<br>7.0 |
| Viscosity Index | 171 |
| Flash Point, °C(°F) | 212(414) |
| Pour Point, °C(°F) | -50(-58) |
| Color | Red |

Minor variations in product typical test data are to be expected in normal manufacturing.

CONFIDENTIAL

AEG001702



Western Marketing Inc.
P.O. Box 147
Abilene, TX 79604
1 (800) 588-4662

# GL-5 GEAR OILS

Preferred Choice GL-5 Gear Oils are multi-service EP gear lubricants manufactured from high quality base stocks and superior additive technology. They are recommended for use in gearboxes, manual transmissions, bearings, gear reducers and many other applications where an API Service classification GL 5 gear lubricant is specified. Preferred Choice GL-5 Gear Oils can be used for make-up of Limited Slip/Positive Traction rear axles.

Directions: Consult owner's manual for instructions and correct viscosity grade.

## INDUSTRY SPECIFICATIONS:

- API MT-1
- API GL-5
- MIL-PRF-2105E
- PG-2 Limited Slip
- MACK GO-J

## TYPICAL TEST DATA

| SAE Grade | 80W-90 | 85W-140 |
|---|---|---|
| Product Number | 225011 | 225013 |
| MSDS Number | 7290 | 7290 |
| Density at 15.6°C(60°F), kg/L(lb/gal) | 0.88(7.3) | 0.91(7.6) |
| Viscosity, Kinematic<br>cSt at 40°C<br>cSt at 100°C | 145<br>14.2 | 341<br>25.0 |
| Viscosity Index | 95 | 95 |
| Flash Point, °C(°F) | 218(424) | 226(439) |
| Pour Point, °C(°F) | -33(-27) | -15(+5) |

Minor variations in product typical test data are to be expected in normal manufacturing.

CONFIDENTIAL

# WESTERN MARKETING, INC.   | Invoice |

| Date |
|------|
| Aug 4, 2017 |

Page: 1

Invoice Number: IN1629503

| 1 20 EXIT 278, | 3302 E SLATON HWY | 4336 STATE HWY31 | 3901 S LOOP 464 |
|---|---|---|---|
| TYE, TX 79563 | LUBBOCK, TX 79404 | LONGVIEW, TX 75603 | MONAHANS, TX 79756 |
| PHONE (325)692-4662 | PHONE (806)745-5550 | PHONE (903)753-2231 | PHONE (432)943-4319 |
| 800 588-4662 | 800-658-2071 | 856-692-4665 | |
| 1201 N E THIRD ST | 1904 HWY 66 WEST | 816 SOUTH BLUE MOUND RD | |
| AMARILLO, TX 79107 | STROUD, OK 74079 | SAGINAW, TX 76131 | |
| PHONE (806)373-4238 | PHONE (918)968-0957 | PHONE (800)332-7132 | |
| 800 333 0789 | 856-653 7531 | | |

FOR CHEMICAL EMERGENCY
CALL CHEMTREC - DAY OR NIGHT
1 (800)-424-9300 (TOLL FREE)

**REMIT TO: P.O.BOX 677422, DALLAS, TX 75267-7422**

| Sold To: | Ship To: |
|---|---|
| AEG PETROLEUM LLC | AEG PETROLEUM LLC |
| P O BOX 1003 | P O BOX 1003 |
| P O # REQUIRED | P O # REQUIRED |
| | AMARILLO, TX 79105 |
| AMARILLO, TX 79105 | |
| | WADE ALEXANDER |

| Order No. | Meter Ticket | Order Date | Customer No. | Salesperson | PO Number | Location | Terms |
|---|---|---|---|---|---|---|---|
| A122632 | SH01031148 | Aug 3  2017 | 31150 | AMATP | 0804170422 | 10 | NET30 |

| Qty. Ord. | Qty. Shp. | Item Number | Description | Unit Price | UOM | Extended Price |
|---|---|---|---|---|---|---|
| 2 597 | 2,597 | 62901624 | BJLK-PC NGEO LA 30 (K) | 7 88 | each | 20 464 36 |

| Due Date | Amount Due |
|---|---|
| Sep 03, 2017 | 20 464 36 |

RECEIVED

ENTERED

| | |
|---|---|
| All accounts are due and payable according to the terms established with our company. Any questions should be mailed to | **Purchased By** |
| | Comments: |
| P O Box 147 | *Service You Deserve* |
| Abilene  TX 79604 | |
| Thank you! | |

| Subtotal | 20,464.36 |
|---|---|
| Total sales tax | 0.00 |
| Total amount | 20,464.36 |
| Less payment | 0.00 |
| Less pmt. disc | 0.00 |
| **Amount due** | **20,464.36** |

CONFIDENTIAL

AEG000012